[No. 5993. Decided March 16, 1906.]

BENJAMIN BANK, *Respondent,* v. EARLE DOHERTY *et al.,*
*Appellants.*[1]

USURY—NOTE OF ANOTHER STATE—MORTGAGE SECURITY IN THIS STATE. A note and mortgage executed and made payable in another state by *bona fide* residents of such state, is a contract of such state and is not usurious if valid in such state.

CONTRACTS — NOTE EXECUTED IN ANOTHER STATE — VALIDITY — USURY. The fact that a binding contract between citizens of another state, valid by the laws of such state, is secured by a mortgage upon real property in this state, does not render the contract subject to the usury laws of this state, or prevent the enforcement of the same here, on the theory that the usury law affects only the remedy.

APPEAL—REVIEW—EXCEPTIONS—SUFFICIENCY. An exception to a finding of the amount of interest due on a note, as unsupported by

1Reported in 84 Pac. 872.

any contrary to the evidence, is sufficient to raise the point that, under the laws of the state where made, which were put in evidence, the interest should have been computed at a different rate after maturity.

INTEREST—NOTE OF ANOTHER STATE—FOREIGN LAWS—CONSTRUCTION. Where a promissory note called for interest at two per cent per month, without specifying any rate after maturity, and the laws of the state where made expressly provide that in such case interest after maturity shall be at the rate of eight per cent per annum, there is no presumption that the parties intended it to run at two per cent per month, and only eight per cent per annum after maturity can be collected.

MORTGAGES—PRIORITY—OWNERSHIP OF PRIOR MORTGAGE—NOTICE. A second mortgagee, who advances the money to pay off a prior mortgage in the hands of one not the owner thereof, pending an appeal by the true owner, in litigation respecting his title to such first mortgage, with actual notice of the rights of the true owner and knowledge of the whole transaction, is not entitled to priority over the true owner upon terminaion of such litigation.

Appeal from a judgment of the superior court for King county, Frater, J., entered July 20, 1905, upon findings in favor of the plaintiff after a trial before the court without a jury, in an action to foreclose a mortgage. Modified.

*Melville C. Brown, John W. Roberts* and *Maurice D. Leehey,* for appellants Doherty *et al.* The defense of usury affects only the remedy, and is governed by the *lex fori. Emery v. Burbank,* 163 Mass. 326, 39 N. E. 1026, 47 Am. St. 456, 28 L. R. A. 57; *Irving v. Ford,* 183 Mass. 448, 67 N. E. 366, 97 Am. St. 447, 65 L. R. A. 177; *Ridgway v. Davenport,* 37 Wash. 134, 79 Pac. 606; *La Selle v. Woolery,* 14 Wash. 70, 44 Pac. 115, 53 Am. St. 855, 32 L. R. A. 73; *Clark v. Eltinge,* 38 Wash. 376, 80 Pac. 556, 107 Am. St. 757; *Craig v. Butler,* 9 Mich. 21; *Thurston v. Prentiss,* 1 Mich. 193; *Sherman v. Gassett,* 9 Ill. 521; *Suffolk Bank v. Kidder,* 12 Vt. 464, 36 Am. Dec. 354; *Collins Iron Co. v. Burkham,* 10 Mich. 283; *Watriss v. Pierce,* 32 N. H. 560; *Wright v. Bartlett,* 43 N. H. 548; *Willis v. Cameron,* 12 Abb. Pr. 245; *Gale v. Eastman,* 7 Met. (Mass.) 14; Story,

Conflict of Laws, § 572; *Gibbs v. Howard,* 2 N. H. 296; *Falls v. United Sav. etc. Co.,* 97 Ala. 417, 13 South. 25, 38 Am. St. 194, 24 L. R. A. 174; *Meares v. Finlayson,* 55 S. C. 105, 32 S. E. 986; *Carpenter v. Lewis,* 60 S. C. 23, 38 S. E. 244; *Turpin v. Povall,* 8 Leigh (Va.) 93; *Sime v. Norris,* 8 Phila. 84. In any event, interest should have been computed at the contract rate to the date of maturity only. *Palmer v. Laberee,* 23 Wash. 409, 63 Pac. 216; *Holden v. Trust Co.,* 100 U. S. 72, 25 L. Ed. 567. The *lex loci contractus* is enforced only as a matter of comity, when in accordance with our own notions of propriety and policy. Minor, Conflict of Laws, p. 8; *Blackington v. Blackington,* 141 Mass. 432, 5 N. E. 830, 55 Am. Rep. 484; *In re Ellis' Estate,* 55 Minn. 401, 56 N. W. 1056, 43 Am. St. 514, 23 L. R. A. 287; *Roth v. Roth,* 104 Ill. 35, 44 Am. Rep. 81; *Cook v. Cook,* 56 Wis. 195, 14 N. W. 33, 43 Am. Rep. 706; *Green v. Van Buskirk,* 5 Wall. 307, 18 L. Ed. 599; *Id.,* 7 Wall. 139, 19 L. Ed. 109; *Hervey v. Rhode Island Locomotive Works,* 93 U. S. 664, 23 L. Ed. 1003; *Pennoyer v. Neff,* 95 U. S. 714, 24 L. Ed. 565; *Atherton Co. v. Ives,* 20 Fed. 894; *Moore v. Land, Title & Trust Co.,* 82 Md. 288, 33 Atl. 641; *Petersen v. Chemical Bank,* 32 N. Y. 21, 88 Am. Dec. 298. It will not be enforced if it contravenes the statute law or established law of the forum. *May v. First Nat. Bank,* 122 Ill. 551, 13 N. E. 806; *Frank v. Bobbitt* 155 Mass. 112, 29 N. E. 209; *Mackey v. Pettijohn,* 6 Kan. App. 57, 49 Pac. 636; *Bowles v. Field,* 78 Fed. 742; *Case v. Dodge,* 18 R. I. 661, 29 Atl. 785; *Despard v. Churchill,* 53 N. Y. 192; *Van Voorhis v. Brintnall,* 86 N. Y. 18, 40 Am. Rep. 505; *Freeman's Appeal,* 68 Conn. 533, 37 Atl. 420, 57 Am. St. 112, 37 L. R. A. 452; *Armstrong v. Best,* 112 N. C. 59, 17 S. E. 14, 34 Am. St. 473, 25 L. R. A. 188; *Commonwealth v. Lane,* 113 Mass. 458, 18 Am. Rep. 509; *True v. Ranney,* 21 N. H. 52, 53 Am. Dec. 164; *Jackson v. Jackson,* 82 Md. 17, 33 Atl. 317, 34 L. R. A. 773; *Pennegar v. State,* 87 Tenn. 244, 10

S. W. 305, 10 Am. St. 648, 2 L. R. A. 703; *State v. Ross,*
76 N. C. 242, 22 Am. Rep. 678; *Edgerly v. Bush,* 81 N. Y.
199; *Woodward v. Brooks,* 128 Ill. 222, 20 N. E. 685, 15
Am. St. 104, 3 L. R. A. 702; *Ex parte Dickinson,* 29 S. C.
453, 7 S. E. 593, 13 Am. St. 749; *Smith v. Union Bank,*
5 Pet. 518, 24 L. Ed. 212; *Williams v. Kemper etc. Dry
Goods Co.,* 4 Okl. 145, 43 Pac. 1148; *Barnett v. Kinney,*
147 U. S. 476, 13 Sup. Ct. 403, 37 L. Ed. 247; *Butler v.
Wendell,* 57 Mich. 62, 23 N. W. 460, 58 Am. Rep. 329;
*Kerr v. Dougherty,* 79 N. Y. 327; Minor, Conflict of Laws,
p. 11. Legislation subsequent to the transaction in dispute
may be looked to to determine the state policy. *Milliken v.
Pratt,* 125 Mass. 374, 28 Am. Rep. 241; *Case v. Dodge,* 18
R. I. 661, 29 Atl. 785; *Fellows v. Miner,* 119 Mass. 541;
*Dammert v. Osborn,* 140 N. Y. 30, 35 N. E. 407. The
privilege of the *lex fori* should be confined to citizens of the
forum. 1 Wharton, Conflict of Laws, p. 10; *Sullivan v. German Nat. Bank,* 18 Colo. App. 99, 70 Pac. 162; *Donovan v.
Pitcher,* 53 Ala. 411, 25 Am. Rep. 634; *Benton v. Singleton,*
114 Ga. 548, 40 S. E. 811, 58 L. R. A. 181; *Pope v. Hanke,*
155 Ill. 617, 40 N. E. 839, 28 L. R. A. 568; *Commonwealth
v. Bassford* 6 Hill 526; *Bartlett v. Collins,* 109 Wis. 477,
85 N. W. 703, 83 Am. St. 928. If the mortgage is merely
a collateral security, the money to be loaned primarily on
the debtor's personal credit, then the law of the place of payment will control. If the money was loaned to be employed
on the land for which the mortgage was given, then the law
of the place where the mortgaged property is situated must
prevail. *Fitch v. Remer,* Fed. Cas. No. 4,836; *Chapman v.
Robertson,* 6 Paige 627, 31 Am. Dec. 264; *Goddard v. Sawyer,* 9 Allen 78; *Pine v. Smith,* 11 Gray 38; *Philadelphia
Loan Co. v. Towner,* 13 Conn. 249; *Levy v. Levy,* 78 Pa. St.
507, 21 Am. Rep. 35; *Kilgore v. Dempsey,* 25 Ohio St. 413,
18 Am. Rep. 306; *Fisher v. Otis,* 3 Chand. (Wis.) 83;
*Arnold v. Potter,* 22 Iowa 194.

*Elmer E. Todd,* for appellant Dutton, contended, *inter alia,* that no legal grounds were stated for vacating the sheriff's sale. Pierce's Code, § 876; *Whitworth v. McKee,* 32 Wash. 83, 72 Pac. 1046; 21 Century Digest, 1326, and authorities cited. An innocent purchaser, without notice, from one who bought at a fraudulent sheriff's sale, will take good title. *Blight's Heirs v. Tobin,* 23 Ky. 612, 18 Am. Dec. 219; *Cowles v. Hardin,* 101 N. C. 388, 7 S. E. 896, 9 Am. St. 36; 25 Am. & Eng. Ency. Law (2d ed.), pp. 803, 804; *Ceburre v. Pearson* 50 N. Y. Supp. 112; *Lavender v. Holmes,* 23 Neb. 345, 36 N. W. 516; *Richey v. Merritt,* 108 Ind. 347, 9 N. E. 368. He is not bound to inquire beyond the record. *Reeve v. Kennedy,* 43 Cal. 643. A sheriff's sale cannot be set aside on motion without notice to the purchaser. *Eckstein v. Calderwood,* 34 Cal. 658; *Osborn v. Cloud,* 23 Iowa 104, 92 Am. Dec. 413; *Harrell v. Word,* 54 Ga. 649; *Clamorgan v. O'Fallon,* 10 Mo. 112; Freeman, Executions (2d ed.), 306. Possession of the note is presumptive evidence of its transfer. *Fischer v. Woodruff,* 25 Wash. 67, 64 Pac. 923, 87 Am. St. 742. Bank is estopped to claim his mortgage as prior to Dutton's. Jones, Mortgages (5th ed.), § 967; *Heyder v. Excelsior etc. Loan Ass'n,* 42 N. J. Eq. 403, 8 Atl. 310, 59 Am. Rep. 49; *City Council v. Ryan,* 22 S. C. 339, 53 Am. Rep. 713; *Robbins v. Todman,* 28 Kan. 491.

*James B. Murphy, Harold Preston,* and *Graves, Palmer, Brown & Murphy,* for respondent, contended, among other things, that the fact that the indebtedness was secured by the mortgage upon real property in the state of Washington, does not make it subject to the Washington laws relating to usury. *Odom v. New England Mortgage Security Co.,* 91 Ga. 505, 18 S. E. 131; *Cotheal v. Blydenburg,* 5 N. J. Eq. 17; *Chase v. Dow,* 47 N. H. 405; *Dolman v. Cook,* 14 N. J. Eq. 56; *Andrews v. Torrey,* 14 N. J. Eq. 355; *Lewis v. Headley,* 36 Ill. 433, 87 Am. Dec. 227; *Hickox v. Elliott,* 22 Fed. 13;

*Call v. Palmer,* 116 U. S. 98, 6 Sup. Ct. 301, 29 L. Ed. 559;
*Fitch v. Remer,* Fed. Cas. No. 4,836; *Black v. Reno,* 59 Fed.
917; *Broughton's Adm'r v. Bradley,* 36 Ala. 689; *Eastwood
v. Kennedy,* 44 Md. 563; *Coghlan v. South Carolina R. Co.,*
142 U. S. 101, 12 Sup. Ct. 150, 35 L. Ed. 951; *Bigelow v.
Burnham,* 83 Iowa 120, 49 N. W. 104; *Oregon etc. Trust
Inv. Co. v. Rathburn,* Fed. Cas. No. 10,554; *Bedford v.
Eastern etc. Loan Ass'n,* 181 U. S. 227, 21 Sup. Ct. 597,
45 L. Ed. 834; *La Selle v. Woolery,* 14 Wash. 70, 44 Pac.
115, 53 Am. St. 855, 32 L. R. A. 73; *Clark v. Eltinge,* 38
Wash. 376, 80 Pac. 556; *De Wolfe v. Johnson,* 10 Wheat.
367, 6 L. Ed. 438; 2 Rose's Notes, 426, and cases cited;
*United States etc. Loan Co. v. Beckley,* 137 Ala. 119, 33
South. 934, 97 Am. St. 19, 62 L. R. A. 33 and note. In-
terest is of the substance of the contract to be determined by
*lex loci contractus. Union etc. Trust Co. v. Gelbach,* 8 Wash.
497, 36 Pac. 467, 24 L. R. A. 359; *State ex rel. Theis v.
Bowen,* 11 Wash. 432, 39 Pac. 648; *State ex rel. Capital Nat.
Bank v. Young,* 22 Wash. 547, 61 Pac. 725. Our usury laws
are not applicable.    *Swinburne v. Mills,* 17 Wash. 611, 50
Pac. 489, 61 Am. St. 932; *Warnock v. Itawis,* 38 Wash. 144,
80 Pac. 297; *Johnson v. Pullman State Bank,* 40 Wash. 64,
82 Pac. 122.    There being no evidence to show a contrary
intention, the law will presume that it was the intention of
the parties that the money should bear the rate specified in
the note, from its making until paid, or until such time as a
judgment might be entered thereon. *Shaw v. Rigby,* 84 Ind.
375, 43 Am. Rep. 96; *Kellogg v. Lavender,* 15 Neb. 256, 48
Am. Rep. 339; *Overton v. Bolton,* 9 Heisk. 762, 24 Am. Rep.
367; *Kohler v. Smith,* 2 Cal. 597, 56 Am. Dec. 369; *Cox
v. Smith,* 1 Nev. 161, 90 Am. Dec. 476; *McLane v. Abrams,*
2 Nev. 199; *Cecil v. Hicks,* 29 Gratt. 1, 26 Am. Rep. 391;
*Union Institute v. Boston,* 129 Mass. 82, 37 Am. Rep. 305;
*Findlay v. Hall,* 12 Ohio St. 610; *Thompson v. Pickel,* 20
Iowa 490; *Hand v. Armstrong,* 18 Iowa 324; *Adams v. Way,*
33 Conn. 419; *Hubbard v. Callahan,* 42 Conn. 524, 19

Am. Rep. 564; *Spencer v. Maxfield,* 16 Wis. 178; *Pruyn v. Milwaukee,* 18 Wis. 367; *Mayor etc. v. O'Callaghan,* 41 N. J. L. 349; *Jones Co. v. Guttenberg,* 66 N. J. L. 659, 51 Atl. 274; *Borders v. Barber,* 81 Mo. 636; *Weems v. Ventress,* 14 La. Ann. 267; *Warner v. Juif,* 38 Mich. 662; *Meaders v. Gray,* 60 Miss. 400, 45 Am. Rep. 414; *Cornwell v. Sac County,* 96 U. S. 57, 24 L. Ed. 686; *Ohio v. Frank,* 103 U. S. 698, 26 L. Ed. 531; *Wadesboro Cotton Mills Co. v. Barnes,* 114 N. C. 353, 19 S. E. 238; *Shipman v. Bailey,* 20 W. Va. 140; *Greenhaw v. Holmes* (Ariz.), 68 Pac. 537; *Kelley v. Phoenix Nat. Bank,* 17 App. Div. 496, 45 N. Y. Supp. 533.

MOUNT, C. J.—This is an action to foreclose certain real estate mortgages. On January 3, 1900, the respondent, Benjamin Bank, a resident of Butte, Montana, loaned to Mary T. Doherty, a resident of the same place, $2,500 on her promissory note, as follows:

"2,500.00.            Butte, Montana, January 3, 1900.
"For value received, three years after date, I promise to pay to B. Bank, or order, the sum of $2,500 at his office in Butte, Montana, with interest at the rate of two per cent per month, payable monthly. The privilege hereby granted to the maker of this note to pay any amount not exceeding $200 per month thereon. Interest to be reduced according to such payments. Payment to be made on interest day. (Signed)    Mary T. Doherty."

At the same time and place, in order to secure the said note, the maker executed two mortgages, a chattel mortgage on certain personal property in Butte, and a real estate mortgage on certain real estate in Seattle, this state. The property included in the chattel mortgage was afterwards sold, and the proceeds of the sale amounted to $96. A short time after the note and mortgages were made, the said Mary T. Doherty died, testate, in Montana. Her will was thereafter admitted to probate in King county, in this state, and letters testamentary with the will annexed issued to appellant

Maurice D. Leehey. Her minor son, the appellant Earle Doherty, a resident of California, was her sole devisee. On March 9, 1901, the respondent brought an action in the superior court of King county to foreclose his real estate mortgage, and at that time filed a *lis pendens* in the office of the county auditor of King county. Subsequently a judgment of foreclosure was entered, and an appeal was taken therefrom to this court. We reversed the judgment, for the reason that the debt was not then due. *Bank v. Doherty,* 29 Wash. 233, 69 Pac. 732. The appellants in that action, Earle Doherty and Mr. Leehey, administrator, were awarded costs therein against Mr. Bank, for the sum of $101.45.

The original note and mortgage had been introduced in evidence by the plaintiffs in that case, as exhibits, and were transmitted here with the record, where they were held by the clerk of this court. After a remittitur in that case had gone down, the parties stipulated in writing that the exhibits might be returned to the clerk of the superior court, to be held by him subject to the demand of the party who introduced the same in evidence. After demand had been made upon Mr. Bank to pay the judgment for costs, as above stated, and he had neglected to do so, an execution was issued at the request of the appellants in that case, and the sheriff levied upon the original note and mortgage, and took the same from the possession of the clerk. The note and mortgage were advertised for sale and, on December 1, 1902, were sold at sheriff's sale to C. L. Byron, defendant in this action, for $110.20, being the amount of the judgment and accrued costs. The sale was subsequently confirmed, and the note and mortgage were delivered to Mr. Byron. Neither Mr. Bank nor his attorneys had any actual notice of the seizure and sale of the note and mortgage. The note had been indorsed in blank by the payee some time before it was introduced in evidence in the first foreclosure action. After the sale to Mr. Byron, the words "pay to C. L. Byron or

order" were written on the note above the respondent's signature.

On December 16, 1902, the appellant Leehey, as administrator of the estate, petitioned the probate court for leave to place another mortgage upon the property described in respondent's mortgage, for the purpose of procuring money with which to pay the respondent's mortgage, then held by C. L. Byron under the said sheriff's sale. On January 13, 1903, the respondent, Mr. Bank, and his attorneys, upon learning that the note and mortgage had been sold, filed a motion to set aside the sale in the original foreclosure action out of which the execution issued. After many continuances of the hearing, and some amendments to the motion, the motion was finally heard, and on April 10, 1903, the superior court of King county made an order setting aside the sale. This order was subsequently affirmed, on appeal, by this court. *Bank v. Doherty,* 37 Wash. 32, 79 Pac. 486.

In the meantime, on February 20, 1903, an order was entered in probate, authorizing the administrator to mortgage the property for the purpose of paying off respondent's note and mortgage while it was held by Mr. Byron. Soon after the sale of the note and mortgage to Mr. Byron, Mr. Leehey, the administrator of the estate of Mary Doherty, deceased, went to Butte, Montana, and there informed J. S. Dutton and Adolph Pincus, two creditors of the estate, that the note and mortgage executed to Mr. Bank were then held by Mr. Byron, and could be satisfied for $2,200; that the mortgaged property was worth at least $3,000; and requested Mr. Dutton and Mr. Pincus to advance $2,200 for the purpose of taking up respondent's note and mortgage, and promising that he, as administrator, would obtain leave of the probate court to execute a new mortgage on the property to secure them for the $2,200, and that by means of such mortgage he would permit them to acquire the title to the property and thus make themselves whole on the estate. Mr. Pincus and Mr. Dutton agreed to this, and while the motion to vacate

the sale of the note and mortgage to Mr. Byron was pending, appellant Leehey, as administrator, executed a mortgage to Mr. Dutton for the sum of $2,200, and Mr. Byron thereupon acknowledged satisfaction of the respondent's note and mortgage, and delivered the same to Mr. Dutton, who thereupon sent to Mr. Leehey a draft for the amount agreed upon, $1,100 being contributed by Mr. Dutton and $1,100 by Mr. Pincus. Mr. Leehey thereupon recorded the mortgage to Mr. Dutton.

After the sale of respondent's note and mortgage was set aside by the court, and after the same became due, respondent brought this action to foreclose his mortgage, and made all persons claiming any interest in the property parties to the foreclosure proceeding. The appellant Dutton filed a cross-complaint, setting up his mortgage, and praying that the same be also foreclosed, and that he be decreed to be a prior mortgagee. At the trial, the court found the facts in favor of the respondent Bank, and that the appellant Dutton took his mortgage with notice and knowledge of respondent's mortgage, and was therefore a subsequent mortgagee. The judgment of the lower court was in favor of the respondent Bank, for the full amount of the note, with interest at two per cent per month from its date to the date of the judgment, and his mortgage was decreed a first lien upon the property for the amount thereof. Appellant Dutton was also given judgment for the amount of the note and mortgage standing in his name, but the court found that he took his mortgage with notice of the respondent's mortgage, and the lien was therefore declared subsequent to respondent's mortgage. The administrator Leehey and the legatee Doherty appeal from the judgment, claiming (1) that the note given to respondent Bank is usurious; (2) that it does not bear interest after maturity at the rate of two per cent per month, and (3) that respondent is not the owner thereof. Mr. Dutton appeals separately, claiming that the court erred in finding that his mortgage was subsequent to respondent's mortgage.

It is apparently conceded that both the note and mortgage sued on by the respondent Bank are Montana contracts. If not conceded, the record conclusively shows that both the maker and the payee of the note and mortgage were *bona fide* residents of Butte, Montana. The note was executed there and was payable there. The mortgage was also executed and delivered at the same time and place as the note. But it described property in King county in this state, and was sent here for record. It is proved and not disputed that the rate of interest provided for in the note and mortgage was valid in the state of Montana, where the contract was made and where it was to be performed. Under these facts there can be no escape from the conclusion that the contract was a Montana contract and was not usurious there. But appellants argue that, while the law of the place of the contract governs as to the interpretation and validity of the note, the law of the forum governs as to remedies for its enforcement. This position is no doubt correct. We said, in *La Selle v. Woolery,* 14 Wash. 70, 44 Pac. 115, 53 Am. St. 855, 32 L. R. A. 73:

"The settled rule is that the law of the place where the contract is made must govern in determining the character, construction and validity of such contract; while the law of the place where suit is instituted upon the contract governs as to "the nature, extent and form of the remedy.' "

Appellants further contend that the usury law of this state affects only the remedy, not the substance of such contracts, and we are cited to Bal. Code, § 3671 (Pierce's Code, § 5706), in support thereof. This is true when applied to contracts executed or to be performed within the state, but it has no application to valid contracts made without the state, and which are governed by the law of another state as to their character, construction and validity. The contract in this case being a valid and binding contract in the state of Montana, the mere fact that its payment was secured by a mortgage on property in this state does not change its character or render it subject to the usury laws of this state. The

mortgage is but the means of securing to the payee what the maker has agreed to pay at the place named in the note. *De Wolf v. Johnson,* 10 Wheat. 367, 6 L. Ed. 438; *Call v. Palmer,* 116 U. S. 98, 6 Sup. Ct. 301, 29 L. Ed. 559; *Coghlan v. South Carolina R. Co.,* 142 U. S. 101, 12 Sup. Ct. 150, 35 L. Ed. 951. The remedy for the foreclosure of the mortgage, being the practice of the courts, is governed, of course, by the laws of this state. *La Selle v. Woolery, supra.* The amount due upon the note is determined by the substance of the note itself, and not by any remedy to enforce it. When the lower court found that the contract was a Montana contract, valid in that state, the terms of the contract determined the amount due, and will be enforced accordingly.

It will be observed by examining the note hereinbefore set out that the maker promised to pay $2,500 three years after date, with interest at the rate of two per cent per month. No provision is made for any rate of interest after maturity. The statute of Montana, as shown and admitted by the pleadings, provides that "unless there is an express contract in writing fixing a different rate, interest is payable on all moneys at the rate of eight per cent per annum after they become due on any instrument of writing," etc. Section 2585, Civil Code of Montana, as amended in 1899. The trial court in this case computed interest, from the date of the note to the date of the decree, at two per cent per month, making a total, after deducting the credit of $96, of $5,596.66, and found that amount to be due. An exception was taken to this finding, as follows: "Because the evidence is insufficient to support said finding, and the same is contrary to the evidence," and for other specified reasons. Respondent contends that this exception is not sufficient to raise the question now presented as to the amount of interest due. We think it is sufficient, under the provisions of Bal. Code, § 5055.

Appellants rely upon the decision of this court in *Palmer v. Laberee,* 23 Wash. 409, 63 Pac. 216. That was a case

where the question arose as to the amount of interest which should be allowed upon a judgment reviving a prior judgment, and this court there held that interest should be allowed at the legal rate where the judgment revived did not recite the amount of interest it should draw. It will be seen that the exact point involved in this case was not before the court in that case, but in discussing the question then before us, reasoning by analogy, we said:

"It will be seen from *Brewster v. Wakefield, supra,* and *Ludwick v. Huntzinger, supra,* that where a note is entirely silent as to interest after it is due, the creditor is entitled to interest by operation of law; and that until the note became payable the agreement of the parties regulated the allowance and the rate of interest, but after that the law interposed not only to allow, but to regulate, the rate of interest that should be allowed the creditor for and on account of the illegal detention of the debt."

This statement of the rule is directly in point in the case now before us.

Counsel for respondent contends that, where there is no evidence to show a contrary intention, the law will presume that it was the intention of the parties that the money should bear the rate specified in the note from its date until such time as a judgment might be entered thereon, and that this is in accord with the great weight of authority in this country, and many cases are cited to support this contention. It is unnecessary to review these authorities because, where there is a statute upon the subject, the statute must control. As we have seen above, the note in question was made in Montana by *bona fide* residents of that state. It was payable there, and the parties to it must have contracted with reference to the law of that state as it existed at the time. The statute in force at the time, as quoted above, provided that interest is payable on all moneys at the rate of eight per cent per annum after they become due, on any instrument in writing, unless there is an express contract in writing fixing a different rate. This statute seems clear and conclusive of

the question. It refers especially to moneys after they become due, and fixes the rate of interest at eight per cent per annum unless the writing fixes a different rate. No decisions of the courts of Montana have been called to our attention construing this section, and we have been unable to find any. We must, therefore, give it the plain meaning which it was evidently intended to have. If the parties had intended the note in question to draw interest at the rate of two per cent per month after maturity, it would have been an easy matter to have placed such intention beyond doubt by simply adding the words "until paid" after the words "two per cent per month." They did not do so, and we must, therefore, conclude that the contract contained all of the agreement, and that the parties intended to let the law fix the rate of interest after maturity, if the note should not be paid when it became due. The lower court was therefore in error in computing interest at two per cent per month after maturity.

The last point made by appellants Doherty and Leehey is that the respondent is not the owner of the note, because it was sold at execution sale. This question was settled by us in the case of *Bank v. Doherty*, 37 Wash. 32, 79 Pac. 486.

The appellant Dutton contends that the court erred in finding his mortgage subsequent to the respondent's mortgage. This question depends upon the facts. There is some conflict in the evidence as to whether Mr. Dutton had actual notice of the condition of the sale of respondent's note and mortgage; but the circumstances surrounding the whole transaction lead us to believe that he had actual notice and knowledge of the whole transaction. He was not a party to it, and probably knew nothing about the proceedings until after the sale had taken place. But before he advanced his money and took his mortgage, we are satisfied that both Mr. Dutton and Mr. Pincus knew all about the sale and the purpose of it. We are further of the opinion that Mr. Dutton was bound by the constructive notice afforded by the *lis pendens* filed a't

the time the original foreclosure action was begun. But actual notice that respondent's mortgage had not been regularly satisfied was sufficient.

The conclusion we have reached upon the question of interest necessitates a modification of the judgment entered at the trial. The court rendered judgment for $5,596.16 and $250 attorney's fees and costs, in favor of respondent Bank. The amount of the judgment should have been $4,662.33, and for $250 attorney's fees and for costs. The judgment was, therefore, $934.83 in excess of what it should have been. No supersedeas bond was given on the appeal, and it now appears from the supplemental record on file in this court that the mortgaged property was sold under the decree and bid in by respondent for $5,500, and that the sale was confirmed on October 28, 1905, leaving a deficiency judgment in favor of respondent for $448.90. In view of these facts, it is ordered that the respondent satisfy the deficiency judgment and pay to the clerk of the court the sum of $445.93, within thirty days after the remittitur is sent down, which last named sum shall be credited upon the judgment in favor of appellant Dutton. If respondent shall not comply with this order as stated above, it is ordered that the judgment appealed from be vacated, and that a new judgment be entered in harmony with the views herein expressed, and a new sale of the mortgaged property had thereunder. Appellants shall recover costs of this appeal against respondent.

CROW, FULLERTON, HADLEY, and DUNBAR, JJ., concur.