[No. 14854.  Department Two.  March 12, 1919.]

# W. G. HATCHER, *Respondent,* v. IDAHO GOLD & RUBY MINING COMPANY, *Appellant.*[1]

MASTER AND SERVANT (13-1, 14) — SERVICE AND COMPENSATION — STATUTORY REGULATION—PAYMENT OF MONEY—WHAT LAW GOVERNS— CONTRACTS MADE AND TO BE PERFORMED IN IDAHO.  A contract for services made and performed in the state of Idaho, agreeing to pay for wages for labor otherwise than in money, does not contravene Rem. Code, §§ 6560, 6561, prohibiting payment for wages for labor in this state otherwise than in lawful money; and the contract being valid in Idaho, is enforcible by action in the courts of this state.

CONTRACTS (39, 41) — LEGALITY — WHAT LAW GOVERNS — PUBLIC POLICY.  Where a resident of this state voluntarily goes into and makes a contract in another state, there to be performed, which contract is valid and binding under the laws of that state, he has no greater right to invoke the public policy of this state in avoidance of the contract than he would have if a nonresident of this state.

SAME.  The public policy of this state, as declared by Rem. Code, §§ 6560, 6561, prohibiting the payment of wages for labor otherwise than in money in certain employments in this state, is not based upon any moral or other consideration rendering such contracts, made and to be performed elsewhere, unenforcible in the courts of this state, if valid where made and performed.

Appeal from a judgment of the superior court for Spokane county, Webster, J., entered February 21, 1918, upon findings in favor of the plaintiff, in an action on implied contract for services, tried to the court.  Reversed.

*Plummer & Lavin,* for appellant.
*Roy A. Redfield,* for respondent.

PARKER, J.—The plaintiff Hatcher seeks recovery in our courts of the alleged reasonable value of services rendered by him as a laborer for the defendant min-

[1]Reported in 179 Pac. 106.

ing company in the state of Idaho.  The company defended by setting up an express contract of employment entered into in Idaho with Hatcher, by the terms of which he was to receive compensation in a specific manner and partially payable out of the proceeds of the company's mine at which he worked.  The mining company claims to have fully performed all it was required to do under the contract of employment and that, therefore, Hatcher cannot recover in this action. Hatcher seeks to avoid the force of this defense by invoking the provisions of our statute, §§ 6560 and 6561, Rem. Code, making such contracts entered into in this state unlawful; contending that such a contract contravenes the public policy of our state, as declared by this statute, rendering such contract, though valid in Idaho, unenforceable in our courts.  Trial in the superior court for Spokane county without a jury resulted in findings and judgment rendered in favor of Hatcher, upon the theory that he is entitled to recover the reasonable value of his services, payable presently in money, regardless of his contract of employment made in Idaho providing otherwise.  From this disposition of the case, the mining company has appealed to this court.

There is no statement of facts in the record before us.  We summarize the facts from the court's findings, as follows: The mining company is a corporation, organized under the laws of the state of Washington, with its principal place of business at Spokane. It has not at any time carried on any mining operations in this state, but has at all times carried on such operations wholly within the state of Idaho. We shall, for argument's sake, assume that Hatcher was, shortly before going to Idaho to work for the company, and since he has ceased to work for the com-

pany, been a resident of this state, though the record before us does not clearly so show. On May 16, 1917, Hatcher entered into an employment contract with the company at its mine in Idaho, by the terms of which he was to receive wages equal to sixty cents per hour, payable by furnishing him sufficient commissary supplies for his living during his employment, the balance to be paid by notes of the company bearing interest at 7 per cent, to be issued to him on the 15th day of each month for the balance due him for services rendered during the previous month, the notes to be paid from the proceeds of the operation of the mine. The reasonable value of Hatcher's services rendered the company, the trial court found to be forty cents per hour, and awarded him recovery upon that basis, deducting the value of the commissary supplies furnished him during his employment. The company has complied with the employment contract in every respect, and is not at this time required to do any more towards paying Hatcher than it has already done, if its duties and obligations in that regard are to be measured by the terms of the contract of employment. As to the validity of the contract under the laws of Idaho, and as to its fairness, the trial court found:

"There is no law in the state of Idaho requiring that labor be paid in cash or any statute similar to that of Washington, and under the laws of Idaho, employers are permitted to pay their employees at such time and manner as is agreed upon between them; and the contract entered into as hereinbefore set forth was a legal and binding contract between the parties to this action so far as the same is to be construed by the laws of Idaho.

"Said contract hereinbefore referred to was not harsh, unfair, or oppressive, nor was it forced upon him by defendant, but the same was made in good

faith by both parties to this action, and was intended at the time to be carried out according to its terms; neither was there any duress, fraud or undue influence practiced upon the plaintiff by the defendant in procuring and entering into the said contract or to engage in the performance of the services rendered."

The only question here to be considered is, shall Hatcher's express contract of employment, made in Idaho, for services to be rendered, and which were actually rendered there, be ignored, and an implied contract substituted therefor, entitling him to full present payment in cash for his services, measured by their reasonable value; upon the ground that the express contract, though made, performable, and performed in Idaho and valid under the laws of that state, is unenforceable on the part of the company in the courts of this state, because of the provisions of our wage and employment statute; Rem. Code, §§ 6560 and 6561, reading as follows:

"It shall not be lawful for any corporation, person or firm engaged in manufacturing of any kind *in this state,* mining, railroading, constructing railroads, or any business or enterprise of whatsoever kind *in this state,* to issue, pay out or circulate for payment of wages of any labor, any order, check, memorandum, token or evidence of indebtedness, payable in whole or in part otherwise than in lawful money of the United States, unless the same is negotiable and redeemable at its face value, without discount, in cash or on demand, at the store or other place of business of such firm, person, or corporation when the same is issued, and the person who, or company which may issue any such order, check, memorandum, token or other evidence of indebtedness shall upon presentation and demand redeem the same in lawful money of the United States. And when any laborer performing work or labor as above shall cease to work whether by discharge or by voluntary withdrawal the wages due shall be forthwith paid either in cash or by order

redeemable in cash at its face value on presentment at bank, store, commissary, or other place in the county where the labor was performed  . . ."

"Any officer or agent of any corporation, or any person, firm, or company engaged in the business of manufacturing of any kind *in this state,* mining, railroading, constructing railroads, or any other business or enterprise of whatsoever kind *in this state,* who by themselves or agents shall issue or circulate, in payment for wages of labor, any order, check, memorandum, token, or evidence of an indebtedness, payable in whole or in part otherwise than in lawful money of the United States, without being payable as required by the last preceding section of this chapter, or who shall fail to redeem this (the) same when presented for payment or demand upon said company or its agent, at his or their office or place of business, in lawful money of the United States, where the said order, check, memorandum, token, or evidence of indebtedness was issued,  . . .  shall be guilty of a misdemeanor,  . . ."

It seems plain to us, from the language of this statute, especially from the words thereof which we have italicized, that it does not in terms prevent our courts from giving full force and effect to the employment contract between Hatcher and the company, made in Idaho; and that, if our courts are to withhold the relief invoked by the company by way of defense in this action, it must be because the public policy of our state, as evidenced by this statute, is of such compelling force as to prevent the recognition of such contract as valid, though lawfully made and enforceable in Idaho.

Plainly, such a contract, when fairly made, as this one was, involves no inherent element of immorality or coercion. It would be illegal if made and to be performed in this state only because of this statute, which looks to the protection of the mining and other em-

ployees engaged in work *performed in this state.* It is manifestly no more in contravention of our public policy, as evidenced by this statute, than is a contract made and to be performed in any other state, providing for a rate of interest lawful in such state but usurious when measured by the terms of our interest statute. In *Bank v. Doherty,* 42 Wash. 317, 84 Pac. 872, 114 Am. St. 123, 4 L. R. A. (N. S.) 1191, it was held, that a promissory note, made and payable in Montana, wherein the maker promised to pay a higher rate of interest than was permissible under our law, was enforceable by action in our courts, including the agreement to pay interest, though the note was secured by mortgage upon real property in this state and the action was to enforce the lien of the mortgage as well as to recover a personal judgment upon the note. Every element of the contract here involved had its *situs* in Idaho, even more completely than did the contract evidenced by the note and mortgage involved in *Bank v. Doherty;* and we must now, therefore, conclusively presume that both parties to this contract contemplated that its validity and enforceability, wherever the latter might be attempted, was to be determined by the laws of Idaho.

This contract is unlike the contract involved in *Carstens Packing Co. v. Southern Pac. Co.,* 58 Wash. 239, 108 Pac. 613, 27 L. R. A. (N. S.) 975. That contract was to be partly performed in the state of Washington, thus bringing it under the controlling influence of our public policy as declared by our statute there involved. Besides, that was a contract containing a stipulation purporting to absolve the defendant railway company from its own negligence as a common carrier, a stipulation all but universally condemned as being against public policy. It was only a statute

of California expressly legalizing such a stipulation that furnished room for argument in that case that the stipulation was valid and enforceable because it was found in a contract made in the state of California. Our decision in *Bank v. Doherty,* it must be conceded, does not contain any express discussion of the law of public policy, as applied to the question of enforcing the Montana note in our courts; but there has not come to our attention any decision of the courts declining to enforce an interest stipulation made in a contract executed and to be performed in a state other than that of the forum, upon the sole ground that such stipulation would be against public policy because usurious, if made in the state of the forum wherein the contract is sued upon. We think there are no such decisions, though there may be decisions refusing to enforce such contracts upon the ground that the agreed rate of interest was so high as to be unconscionable.

Contention is made in behalf of Hatcher, rested upon the fact that he is a resident of the state of Washington, counsel invoking the law as stated in Story, Conflict of Laws (8th ed.), § 244, as follows:

"But there is an exception to the rule, as to the universal validity of contracts; which is, that no nation is bound to recognize or enforce any contracts which are injurious to its own interests, or to those of its own subjects. Huberus has expressed it in the following terms: '*Quatenus nihil potestati aut juri alterius imperantis ejusque civium praejudicetur;*' and Mr. Justice Martin still more clearly expresses it in saying that the exception applies to cases in which the contract is immoral or unjust, or in which the enforcing it in a state would be injurious to the rights, the interest, or the convenience of such state or its citizens. This exception results from the consideration that the authority of the acts and contract done in

other states, as well as the laws by which they are regulated, are not, *proprio vigore,* of any efficacy beyond the territories of that state; and whatever effect is attributed to them elsewhere is from comity, and not of strict right. And every independent community will and ought to judge for itself how far that comity ought to extend. The reasonable limitation is, that it shall not suffer prejudice by its comity.''

The argument seems to be that, to enforce the express employment contract made by Hatcher with the company, would be to work injury to him as a resident of this state, in violation of its declared public policy. This, if sound, would mean that he has a higher right to the protection of such public policy than a resident of another state would have, suing as he does in this action. This Idaho contract, as we view it, is not necessarily injurious to the citizens of this state when sought to be enforced here, as a gambling or other immoral contract would be. It is true that, in *Bank v. Doherty,* it is noted that the maker and payee of the note and mortgage there involved were both residents of Montana; and in that respect the facts of that case differ from what we have assumed to be the facts here with reference to the residence of these parties. But we are unable to see that the mere residence of the parties in one state or another has any controlling force touching the question of the enforceability of this contract in our courts, in so far as the question of public policy is concerned. These parties both voluntarily went into the state of Idaho and made this contract there. They thereby voluntarily submitted themselves to the laws of Idaho, in so far as their rights under it are concerned. And we think, in seeking to enforce it in this state, either affirmatively or as a defense in an action between them directly involving it, they should

be treated, and their rights measured, by our courts exactly as if they were residents of Idaho.

We are not impressed with the notion that litigants, especially citizens of the United States—and we are assuming Hatcher to be a citizen of the United States —have any different rights or privileges in our courts touching their right of recovery or making defense · in an action therein, of which our courts have properly assumed jurisdiction, by reason of the fact that they may or may not be residents of this state, whether the action be entertained by our courts as a matter of absolute right on the part of the litigants, or as a matter of comity on the part of our courts. The latter would seem to be the basis of our court's entertaining this action, even so far as Hatcher's right to sue therein on his alleged implied contract is concerned, in view of the fact that it is at all events a purely transitory action. When a resident of this state voluntarily goes into another state and there makes a contract to be wholly performed there, which contract is valid and binding under the laws of that state, and it is sought to be enforced by the other party thereto in the courts of this state, either as the basis for a cause of action, or as a defense thereto, we are quite unable to see any sound reason why he should have any higher or better right to invoke the public policy of this state in avoidance of the contract than he would have if he were a nonresident of this state. Having voluntarily gone into Idaho, and there entered into the contract, we think Hatcher is in no position to claim any special rights or privileges looking to the avoidance of it, merely because he is a resident of this state, and that he cannot rightfully claim to be injured thereby as a resident of this state.

We are of the opinion that, while our wage and em-

ployment statute, above quoted from, does, in a sense, declare a public policy of this state, it was not the legislative intent to thereby declare a public policy based upon any moral or other considerations looking to the protection of the state and its inhabitants of such controlling force as to render contracts of the nature here involved, made and to be performed in another state, unenforceable in our courts, when the rights of the parties to such contracts are drawn in question in an action properly pending therein.

There are two causes of action set up in the complaint, one resting upon Hatcher's own employment, and the other being sued upon by him as assignee of a fellow workman. We find it unnecessary to notice this assigned cause of action separately, since the facts controlling the rights of the parties are exactly the same with reference to both causes of action, in so far as we are here concerned with them.

The judgment is reversed and the action dismissed.

HOLCOMB, MAIN, FULLERTON, and MOUNT, JJ., concur.