[No. 27205.    Department Two.    November 16, 1938.]

C. MIRGON, *Appellant,* v. HARVEY R. SHERK, *Respondent,* MYRTLE SHERK, *Defendant.*[1]

[1]Reported in 84 P. (2d) 362.

*Edgar M. Swan,* for appellant.

*Robert W. Garver,* for respondent.

*Sugg & Mason* and *P. J. Kirwin, amici curiae.*

SIMPSON, J.—This action was begun to collect the balance due upon a promissory note and to foreclose a chattel mortgage given to secure its payment. Subsequent to the execution of the promissory note and mortgage, hereinafter referred to, the respondent obtained a divorce from the defendant. She did not answer, and the respondent appeared solely on his own behalf, admitted the making of the note and mortgage, and alleged that the interest charged was usurious. After a trial to the court, judgment was rendered in favor of the respondent. The appellant urges that the court erred in holding that the interest charged upon the note amounted to usury.

The undisputed facts show that the Baldy Finance Company is an Oregon corporation, having its principal place of business at Portland, Oregon. It is authorized under the laws of that state to charge interest at the rate of three per cent per month on deferred unpaid balances, as provided by the "small loan act." It has branch offices at Seattle, Spokane, Bellingham, Everett, Olympia, Longview, and Vancouver, in the state of Washington, and in Billings, Helena, and Missoula, Montana. The record shows that in at least some of the branch offices in this state the company charges the same rate of interest mentioned in the note sued upon. It also advertises its

business in a Vancouver newspaper and from a Portland, Oregon, broadcasting station.

July 18, 1932, respondent applied at the Vancouver office of the finance company for a loan, and at that time executed the note in question for $280, payable to the Baldy Finance Company at its office in Portland, Oregon, in twenty equal installments, with interest on unpaid balances at the rate of three per cent per month, as provided by the "small loan act" of the state of Oregon. The note was secured by a chattel mortgage upon personal property situated in Washington. After its execution, the note was forwarded to the Baldy Finance Company's office in Portland, Oregon, and retained at that place.

Thereafter, respondent made some payments at the Vancouver office, which were regularly deposited in the Vancouver bank and later transmitted to the Portland office. Respondent failed to make the payments provided for in the note, and a collector employed by the company called on him and made certain collections. The note and mortgage in question were assigned to appellant by the Baldy Finance Company, the original holder. At the time of the trial, there was an admitted balance due of $168, with interest thereon from September 28, 1933.

Under the laws of this state, a rate of interest in excess of twelve per cent per annum is usurious. Rem. Rev. Stat., § 7300 [P. C. § 3156]; *Jason v. Sandros,* 168 Wash. 87, 10 P. (2d) 995; *Edwards v. Surety Finance Co.,* 176 Wash. 534, 30 P. (2d) 225; *Tacoma Hotel, Inc. v. Morrison & Co., Inc.,* 193 Wash. 134, 74 P. (2d) 1003.

Appellant contends, however, that, because the Baldy Finance Company is an Oregon corporation, organized under the laws of that state and authorized by its laws to charge the rate of interest named in the

note, and that the place of performance was in Portland, Oregon, the legality of the note must be construed in accordance with the laws of that state.

██ It is the general rule that a contract must be construed in accordance with the laws of the place of performance. 2 Beale, The Conflict of Laws (1935 ed.), 1271, §§ 365.1 and 366.1. This rule rests upon a comity which exists between the states of the Union. A doctrine of comity, however, does not require that any sister state shall enforce contracts to be performed in another which are so contrary to the laws of the state in which they are sought to be enforced as to work a serious interference with its own policy or laws.

"The doctrine of comity must yield to the positive law of the land. Hence, the foreign law must give way when in conflict with the statutes of the forum or the settled current of its judicial decisions.

"Foreign laws will not be given effect when to do so would be contrary to the settled public policy of the forum. Applications of this principle are frequent in the case of gaming contracts, lotteries, contracts exacting usurious rates of interest, . . ." 12 C. J. 438, §§ 14 and 15.

The views of this court concerning the rule of comity are expressed in *Carstens Packing Co. v. Southern Pac. Co.*, 58 Wash. 239, 108 Pac. 613, 27 L. R. A. (N. S.) 975, as follows:

"Are not these considerations sufficient to show that no rule of comity requires us to ignore the declared public policy of our state, in order that the terms of a contract made in another state shall be recognized as valid here, simply because such terms are valid where made. Is it not as much our right and duty to withhold the aid of our courts from the enforcement of such a provision as if it were made part of a contract entered into here? Is not the state of Washington as much a sovereign as the nation, as to

the matter here involved? We see no more reason for yielding our public policy to the end that this attempted limitation upon appellant's liability may be enforced here than there would be for the highest court of the nation overriding a rule of public policy to the end that a contract made in a foreign country might be enforced here. We are of the opinion that the provisions of these contracts, sought to be invoked as a defense by the appellant, are clearly in violation of the public policy of our state, and should not be recognized as valid here although admitted to be valid and enforceable in the state where the contracts were made."

This rule was followed in *Farley v. Fair,* 144 Wash. 101, 256 Pac. 1031, in which we refused to enforce a contract relating to a commission for selling real estate situated in Washington, which contract was legally made in Oregon between parties resident therein.

We have declared the public policy of this state as opposed to the collection of interest in excess of twelve per cent per annum.

In *Motor Contract Co. v. Van Der Volgen,* 162 Wash. 449, 298 Pac. 705, 79 A. L. R. 29, the court said:

"The usury act (Rem. Comp. Stat., § 7304) provides that, if a greater rate of interest than is legal shall be contracted for or received, the contract is not void, but if an action is brought on that contract, and proof be made that a rate in excess of the legal rate of interest has been exacted, the plaintiff shall only recover the principal, less the amount of interest accruing thereon at the rate for which the parties contracted; and, if interest shall have been paid, the judgment shall be for the principal sum less twice the amount of interest paid, and less the amount of all accrued and unpaid interest.

"That is a declaration of public policy. Usurious contracts are not by the statute made void. However, the statute penalizes one exacting interest at a higher rate than the statute permits. The statute was passed in the interest of the public, to protect persons against

exactions to which they might be subjected because of their necessities.

" 'Whether a contract is against public policy is a question of law for the court to determine from all the circumstances of each case. It is clearly to the interest of the public that persons should not be unnecessarily restricted in their freedom to make their own contracts; and therefore agreements are not to be held void as being contrary to public policy unless they are clearly contrary to what the legislature or judicial decision has declared to be the public policy or they manifestly tend to injure the public in some way. On the other hand the interests of the public do require that there shall be some restrictions on the freedom of persons to enter into contracts; and if an agreement binds a party to do or not to do anything, the doing or omission of which is manifestly injurious to the public interests, the courts must declare it contrary to public policy and therefore illegal and void.' 13 C. J., p. 427, § 366.

"A provision in a contract, such as the one in the case at bar, to render such instrument negotiable, and thus cut off the defenses of fraud and usury, violates the public policy of the state. To recognize as valid such an agreement would be to nullify the object not only of the negotiable instruments act but also the purpose of the usury law."

The law relating to usury, as applied to contracts performed in another state, is set out in 66 C. J. 150, § 21:

"When a contract is usurious by the law of the place where it was made, but the rate of interest is not higher than is lawful in the place where the obligation is to be paid, the parties will be presumed to have contracted with reference to the latter place, and the contract will be upheld, provided always that there is no evidence showing bad faith, or an intention to evade the usury laws of the place of contract, for where the contract is executed in one place and made payable in another the parties cannot contract for the highest legal rate of interest in either state where it is an at-

tempt to evade the usury laws of the place of the contract."

The note transaction in question here was not an isolated one. The Baldy Finance Company has been engaged in the business of loaning money in the state of Washington at a rate of interest amounting to usury under the statutory and decisional laws of this state. It had seven branch offices in this state and, in part of them at least, was loaning money and charging interest at a rate of three per cent per month. In its Vancouver branch, it had a manager and collector. In that city, it had a bank account, in which it deposited its collections and made loans from the moneys in that account. It advertised its business in a local newspaper, but did not designate, in at least some of its advertisements, that it was an Oregon corporation. From their methods of doing business, it is plain that the company has been intentionally violating the usury laws of this state and our express public policy with reference to the rate of interest on loans. A domestic corporation charging the same rate of interest would be liable to the penalties of usury.

Article XII, § 7, of our constitution is as follows:

"No corporation organized outside the limits of this state shall be allowed to transact business within the state on more favorable conditions than are prescribed by law to similar corporations organized under the laws of this state."

Rem. Rev. Stat., § 3852 [P. C. § 4657], among other things makes the following provision:

"Provided, however, that this chapter shall not be [so] construed as to allow such foreign corporation to transact business within the state on more favorable conditions than are prescribed by law for a similar corporation organized under the laws of this state: . . ."

To hold the contract in question not usurious, would

in effect approve the business conducted in this state by the Baldy Finance Company and allow a foreign corporation the privilege of conducting its business upon more favorable conditions than are accorded to corporations of this state, thereby contravening the provisions of our constitution and statutes and the public policy therein announced. *State ex rel. Amalgamated etc. Co. v. Nichols,* 47 Wash. 117, 91 Pac. 632; *State ex rel. Baker River & S. R. Co. v. Nichols,* 51 Wash. 619, 99 Pac. 876.

Appellant relies upon the case of *Hatcher v. Idaho Gold & Ruby Mining Co.,* 106 Wash. 108, 179 Pac. 106. That case is clearly distinguishable on its facts from the one at bar. In the course of that opinion, there was cited *Bank v. Doherty,* 42 Wash. 317, 84 Pac. 872, 114 Am. St. 123, 4 L. R. A. (N. S.) 1191, in which the court held a promissory note, made and payable in Montana, secured by a chattel mortgage upon real estate situated in Washington, wherein the maker promised to pay a higher rate of interest than was permissible under the law of this state, was enforcible in our courts. The *Doherty* case is also distinguishable from the present one, in that there was merely a single isolated transaction, both the maker and payee were residents of the sister state, Montana, no corporation was involved, and the transaction was executed in that state.

In our opinion, the charge of usury is well sustained from the facts and circumstances disclosed by the record; the intent to evade the laws of the state of Washington is manifest; and, by virtue of the infliction of the penalties prescribed by Rem. Rev. Stat., § 7304 [P. C. § 3161], nothing remains due to appellant on the note in question.

The judgment will be affirmed.

STEINERT, C. J., BEALS, MILLARD, and GERAGHTY, JJ., concur.