[No. 11743. *En Banc.* May 6, 1914.]

MICHAEL J. REYNOLDS, *Appellant*, v. HARRY L. DAY *et al.*, *Respondents.*[1]

VENUE—TRANSITORY ACTIONS—PERSONAL INJURIES. An action for personal injuries, accruing in another state, is transitory, and' may be begun in this state wherever service can be had.

COURTS—COMITY—TRANSITORY ACTION—MASTER AND SERVANT—INDUSTRIAL INSURANCE—COMMON LAW ACTIONS—PUBLIC POLICY—CONSTITUTIONAL LAW—EQUAL PROTECTION OF LAWS. The industrial insurance law, 3 Rem. & Bal. Code, § 6604-1, declaring that the common law system governing the remedy of workmen against employers in hazardous work is economically unwise and inadequate, and with-. drawing the common law action in certain classes of cases in which compensation by industrial insurance is substituted, is not so antagonistic to the common law' action as to warrant a denial of jurisdiction in our own courts of a case arising at common law in another state in which there is no compensation by industrial insurance, in view of the rule of comity for the recognition of transitory actions not contrary to the public policy of this state nor contrary to abstract justice nor pure morals or calculated to injure this state; especially in view of the provisions of our law authorizing the common law action in all cases where the employer is in default in the payment of his industrial insurance premiums; as it would deny to citizens of other states the same privileges accorded to our own citizens, in violation of § 2, art. 4 of the Federal constitution.

COURTS—COMITY—EXPENSE. The expense to taxpayers and the inconvenience to our courts upon cases arising in other jurisdictions is not a valid' objection to the indulgence of the principle of comity in actions for personal injuries arising in other states.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered November 20, 1913, dismissing an action for personal injuries sustained by a miner, upon sustaining a demurrer to the complaint. Reversed.

*Robertson & Miller* and *Corkery & Corkery,* for appellant.

*John H. Wourms* and *Graves, Kizer & Graves,* for respondents.

[1]Reported in 140 Pac. 681.

ELLIS, J.—The plaintiff brought this action in the superior court of Spokane county to recover for personal injuries suffered by him, which injuries he alleges were caused by the negligence of the defendants while he was in their employ as a laborer in their mine in the state of Idaho. The amended complaint sets up an ordinary cause of action, as at common law, against a master for negligent injury to his servant. This is followed by the allegation:

"That there is not any statute or law in the state of Idaho providing for compulsory or industrial insurance and the plaintiff does not receive, under the laws of the state of Idaho, any benefits, insurance or compensation on account of said injuries as provided for employes under the laws of the state of Washington."

There is no allegation as to what is the law of the state of Idaho relating to the maintenance of such actions, save the inference arising from the allegation quoted that there is no statute covering the case. A demurrer was interposed, upon the grounds that the court had no jurisdiction of the the subject-matter and that the complaint did not state facts sufficient to constitute a cause of action. The demurrer was sustained, and the action dismissed, upon the sole ground, as expressed in the court's order, that "the court has no jurisdiction of the subject-matter of the action." The plaintiff appealed.

There was apparently no opportunity given for further amendment of the complaint so as to set out more specifically the law of the state of Idaho, and it is manifest that, if the decision of the trial court is correct, an amendment in that particular would have been unavailing in any event. Moreover, it seems to be conceded in the respondent's brief that, for the purposes of this review, it will be assumed that the common law as applied to actions of this character prevails in the state of Idaho. Any other course would be obviously unfair, since, if the court had overruled the demurrer on the jurisdictional ground, but sustained it on the ground of in-

sufficiency of facts, the appellant doubtless would have secured leave to amend.

The respondents contend, and the trial court apparently held, that it is contrary to the public policy of this state to permit the maintenance of an action of this character, and that this policy will not be controlled by the rule of comity so as to permit our courts to entertain such an action upon a cause arising outside of this state.

It is asserted that a policy hostile to such an action as this is specifically declared in the first section of the Industrial Insurance Act, Laws of 1911, p. 345 (3 Rem. & Bal. Code, § 6604-1). That section reads as follows:

"The common-law system governing the remedy of workmen against employers for injuries received in hazardous work is inconsistant with modern industrial conditions. In practice it proves to be economically unwise and unfair. Its administration has produced the result that little of the cost of the employer has reached the workman and that little only at large expense to the public. The remedy of the workman has been uncertain, slow and inadequate. Injuries in such works, formerly occasional, have become frequent and inevitable. The welfare of the state depends upon its industries, and even more upon the welfare of its wage-worker. The state of Washington, therefore, exercising herein its police and sovereign power, declares that all phases of the premises are withdrawn from private controversy, and sure and certain relief for workmen, injured in extrahazardous work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this act; and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished, except as in this act provided."

In the absence of a statute declaring it local, an action for personal injury is a transitory action, and may be brought wherever service can be had upon the person responsible for the injury.

"Wherever, by either the common law or the statute law of a state, a right of action has become fixed and a legal liability incurred, that liability may be enforced and the right of action pursued in any court which has jurisdiction of such matters and can obtain jurisdiction of the parties.

"The action in the present case is in the nature of trespass to the person, always held to be transitory, and the venue immaterial . . . It would be a very dangerous doctrine to establish, that in all cases where the several states have substituted the statute for the common law, the liability can be enforced in no other state but that where the statute was enacted and the transaction occurred." *Dennick v. Railroad Co.*, 103 U. S. 11, 18;

See, also, 40 Cyc. 105; 22 Am. & Eng. Ency. Law (2d ed.), pp. 1379, 1380.

Under the rule of comity, rights which have accrued by the law of another state or nation are treated as valid everywhere. When the action is transitory and the jurisdiction of the parties can be obtained by service of process, the foreign law, if not contrary to the public policy of the state where the action is brought, nor contrary to abstract justice nor pure morals nor calculated to injure the state or its citizens, will be recognized and enforced. This rule applies alike to actions *ex contractu* and actions *ex delicto*. In all such cases, the right to recover is governed by the *lex loci* and not by the *lex fori*. In an action where the injury occurred in Montana and the suit was brought in Minnesota, the laws of the two jurisdictions being different as to the measure and amount of recovery, the supreme court of the United States, in an opinion delivered by the present chief justice, quotes with approval from *Herrick v. Minneapolis & St. L. R. Co.*, 31 Minn. 11, 16 N. W. 413, 47 Am. Rep. 771, as follows:

"But it by no means follows that, because the statute of one state differs from the law of another state, therefore it would be held contrary to the policy of the laws of the latter state. Every day our courts are enforcing rights under foreign contracts where the *lex loci contractus* and the *lex*

*fori* are altogether different, and yet we construe these contracts and enforce rights under them according to their force and effect under the laws of the state where made. To justify a court in refusing to enforce a right of action which accrued under the law of another state, because against the policy of our laws, it must appear that it is against good morals or natural justice, or that, for some other such reason, the enforcement of it would be prejudicial to the general interests of our own citizens."

adding:

"The contract of employment was made in Montana and the accident occurred in that state, while the suit was brought in Minnesota. We think there was no error in holding that the right to recover was governed by the *lex loci* and not by the *lex fori.*" *Northern Pac. R. v. Babcock*, 154 U. S. 190.

The supreme court of Illinois has clearly stated the same rule:

"Actions not penal, but for pecuniary damages for torts or civil injuries to the person, are transitory, and if actionable where committed, in general may be maintained in any jurisdiction in which the defendant can be legally served with process. We think it well settled that, without regard to the rule which may obtain as to a cause of action which accrued under the laws of a separate and distinct nation, a right of action which has accrued under the statute of a sister state of the Union will be enforced by the courts of another state of the Union, unless against good morals, natural justice or the general interest of the citizens of the state in which the action is brought." *Chicago & E. I. R. Co. v. Rouse*, 178 Ill. 132, 52 N. E. 951.

See, also, *Stewart v. Baltimore & Ohio R. R. Co.*, 168 U. S. 445; *Morris v. Chicago, R. I. & P. R. Co.*, 65 Iowa 727, 23 N. W. 143, 54 Am. Rep. 39; *Higgins v. Central N. E. & W. R. Co.*, 155 Mass. 176, 29 N. E. 534, 31 Am. St. 544; *Railway Co. v. Lewis*, 89 Tenn. 235, 14 S. W. 603; Story, Conflict of Laws (8th ed.), p. 845, note a; Dicey, Conflict of Laws (Am. Notes), pp. 667, 668. This rule applies even though the plaintiff could not have recovered had the injury occurred in

the state of the forum. *Walsh v. New York & N. E. R. Co.,*
160 Mass. 571, 36 N. E. 584.

Measured by these principles, is the spirit of the industrial
insurance law so antagonistic to the common law action as
to warrant a denial of jurisdiction in our courts of a case
such as this? There is nothing penal in the common law ac-
tion, nor anything contrary to good morals or natural jus-
tice, nor is it, for any cognate reason, prejudicial to the gen-
eral interests of our citizens. That the legislature did not so
regard it is evidenced by its preservation in all cases save
those for injury in "extrahazardous work," and the permis-
sion of its application under certain conditions even in such
cases.

The respondents' position is clearly and forcibly stated in
their brief as follows:

"The amended complaint leaves us somewhat in the dark
as to what is the law of Idaho on the subject of compensa-
tion to injured workmen. It merely pleads that there is no
statute in Idaho providing for compulsory or industrial in-
surance. No statute of Idaho governing the subject being
pleaded, and the state of the law there being not more spe-
cifically alleged, we presume that the courts will assume that
the common law prevails in Idaho. Now the common law
system of compensating injured workmen is particularly and
*eo nomine* contemned by the industrial insurance act. It is
declared 'to be economically unwise and unfair.' It is said
that 'its administration has produced the result that little of
the cost of the employer has reached the workmen and that
little only at large expense to the public.' Because of the
unwisdom of the common law system in that behalf, the state
of Washington, it is declared, has withdrawn the compensa-
tion of injured workmen 'from private controversy' and has
abolished 'all civil actions and civil causes of action for such
personal injury and all jurisdiction of the courts of the
state' thereover. If this be not the declaration of a policy
utterly antagonistic and opposed in its every notion and
theory to the common law it is impossible to frame such a
declaration."

Conceding the premises, with the exceptions made by the statute itself, the conclusion does not follow. The hostility of our law is not directed against the remedial purpose of the common law. It extends that purpose to cases not reached by the common law action. The rule of the common law is contemned not because it furnishes a remedy, but because the remedy is deemed inadequate. This is far from a declaration of policy which would refuse that remedy where that remedy is the only alternative. There is nothing in the employers' liability act so hostile to the common law remedy as to deny any remedy where the circumstances will permit the application of no remedy save that of the common law. The assertion that our law declares a policy "utterly antagonistic and opposed in its every notion and theory to the common law" is more rhetorical than exact. It is true only in a qualified sense. Our law is not opposed to the common law theory of *recompense* for injury. It is only opposed to the common law assumption that a suit at law furnishes *adequate* recompense. Such a policy is certainly not contrary to the giving of any remedy merely because the only remedy possible is deemed inadequate. Our statute was never intended to declare that, because workmen injured in this state receive compensation without suit, it is against the public policy of this state that workmen injured outside of the state, and where the common law prevails, should receive any compensation.

The expense to our taxpayers and the inconvenience to our courts which would result from entertaining suits upon causes of action arising in other jurisdictions is advanced as another reason why the rule of comity should not prevail in such cases. It is pointed out that one of the motives for the passage of the industrial insurance act was to avoid the expense imposed by the operation of the common law system of compensation. It is claimed that this policy is shown in the the preamble of the act, where it is said that the administration of that system has been "at large expense to the public."

To our minds this hardly justifies the respondents' conclusion. Such actions are still maintained in this state where the cause of action arises in this state, even in cases falling within the purview of the industrial insurance act, when the employer is in default in any payment due from him to the accident fund. Industrial insurance act, § 8; Laws of 1911, p. 362 (3 Rem. & Bal. Code, § 6604-8). In *State ex rel. Baker River etc. R. Co. v. Nichols,* 51 Wash. 619, 99 Pac. 876 (though as there indicated, the question of comity was not really involved, but only a question of statutory construction), it was pointed out that public policy is dependent upon our own laws, while comity is based upon the laws of other states or countries. In that case, it is well stated that:

"Comity depends not alone upon a disposition to favor the citizen of another state or country, but rests upon well settled principles of practice, expediency and convenience. It is a rule recognized by courts and applied within bounds of discretion. It is based upon the statute law or decisions of courts of general jurisdiction of other states or countries rather than our own. These will be recognized and given force if it be found that they do not conflict with the local law, inflict an injustice on our own citizens, or violate the public policy of the state."

Unquestionably, before the industrial insurance act was passed, our courts would have entertained this action under the rule of comity so defined. Can it be said, with any show of reason, that, because our courts have been relieved of much of this character of litigation when arising between our own citizens and on causes originating in our own state, there is now such an overpowering inconvenience as to make it inexpedient to entertain jurisdiction of a cause of action arising in another state which would have been entertained but for that relief? Every trial of a case of which jurisdiction is taken by comity adds just that much to the burden of taxation. That fact, however, is only valid as an argument against the indulgence of the principle of comity in any case. It has no peculiar application to cases of this kind.

There is another consideration which presents an insuperable obstacle to the respondents' position. In order to make the common law remedy so contrary to the public policy of this state that it will not be enforced as a matter of comity, it must appear that the common law remedy will never be enforced under any circumstances where the cause of action arises in this state between our own citizens. We again impress the fact that the common law action may still be maintained and its remedy enforced as against an employer in this state in all cases not specifically covered by the industrial insurance act. Moreover, the industrial insurance act, upon which the respondents rely as the sole manifestation of a public policy of this state inimical to the common law action, expressly excepts cases where the employer is in default in his contribution to the statutory insurance fund. We have held that such payment is a matter of affirmative defense which must be pleaded and proved in order to defeat an action at law against the employer for injury to his employee. *Acres v. Frederick & Nelson, ante* p. 402, 140 Pac. 370. This negatives any such hostility of our public policy to the common law action, even in cases arising in this state and within the purview of the act, as to override the rule of comity in favor of a cause of action arising in a jurisdiction where there is no statute creating such a fund or providing any other remedy than that of the common law. To construe our statute as declaring such a public policy as that claimed would, aside from any rule of comity, render it subject to the ban of § 2, art. 4 of the Federal constitution. It would deny to the citizens of other states the same privileges which it accords to our own citizens in like circumstances.

"In the decision of the merits of the case there are some fundamental principles which are of controlling effect. The right to sue and defend in the courts is the alternative of force. In an organized society it is the right conservative of all other rights, and lies at the foundation of orderly government. It is one of the highest and most essential privileges of citizenship, and must be allowed by each state to the

citizens of all other states to the precise extent that it is allowed to its own citizens. Equality of treatment in this respect is not left to depend upon comity between the states, but is granted and protected by the Federal constitution." *Chambers v. Baltimore & Ohio R. R.*, 207 U. S. 142.

See, also, *Cole v. Cunningham*, 133 U. S. 107; *Corfield v. Coryell*, 4 Wash. (C. C.) 371, 381.

The legislature never intended the act in question to infringe the broad rule of comity as heretofore recognized by the highest courts, both state and Federal. To give the act that effect, would wantonly endanger its constitutionality.

The judgment is reversed and the cause is remanded, with direction to permit an amendment of the complaint so as to plead the law of Idaho applicable in such a case, and for further proceedings.

Crow, C. J., Main, Gose, Parker, and Fullerton, JJ., concur.