Diane JEFFREY, Plaintiff,

v.

WHITWORTH COLLEGE, a corporation, Defendant.

No. 1168.

United States District Court, E. D. Washington, N. D.

Feb. 4, 1955.

**220**

R. Max Etter, Spokane, Wash., John R. Inderrieden, Los Angeles, Cal., for plaintiff.

John D. MacGillivray, Spokane, Wash., for defendant.

DRIVER, Chief Judge.

Plaintiff brought this action to recover damages for personal injuries. Defendant moved for summary judgment on the pleadings and the pretrial order on the ground that as a charitable corporation it was not liable for any injuries inflicted upon plaintiff by the negligence of its servants. If there is no real factual issue and defendant is entitled to judgment as a matter of law on the record, the motion should be granted.[1] But plaintiff's material allegations and contentions of fact must be accepted as true and she must be given the benefit of the most favorable inferences which reasonably can be drawn therefrom.[2] So treated, the pertinent facts may be summarized as follows:

At all times herein, defendant was a charitable institution and corporation organized under the laws of the State of Washington, engaged in operating a college at Spokane, and plaintiff was a citizen of the State of California and a regularly enrolled and tuition-paying student in defendant college.

For many years defendant had provided for its students an annual recreational outing known as a "Snow Frolic". In the winter of 1951–1952 defendant arranged for the event by entering into a fixed fee contract for the use of the facilities of the Signal Point Ski Resort, located at Post Falls, Idaho. Defendant agreed to furnish all facilities for the day, including transportation, instructors, skis, and any and all other equipment, and undertook to maintain its own ski patrol whose duty it was to police the area during the time the recreational and athletic activities were in progress. A ski run and a ski tow at the resort were available for the snow frolic, but there were no facilities for tobogganing, and the terrain was not adapted or suitable for that activity. The presence of ski towers, trees, and other obstacles made it impossible to use toboggans safely. The plaintiff was unacquainted with winter sports such as skiing and tobogganing and, as a

1. Fed.Rules Civ.Proc. rule 56(c), 28 U.S. C.A.; Byrnes v. Mutual Life Ins. Co., 9 Cir., 1954, 217 F.2d 497.

2. Ramsouer v. Midland Valley R. Co., 8 Cir., 135 F.2d 101, 106.

student of the college participating in the snow frolic, relied wholly upon the judgment, supervision, and direction of the defendant's agents and employees.

Prior to February 12, 1952, and again on that day, the defendant was informed that the Signal Point Ski Resort was not suitable or safe for the use of toboggans, but despite such notice and warning, the defendant permitted and encouraged tobogganing during the course of the snow frolic. The plaintiff, while a passenger on a toboggan at the resort on February 12, 1952, was seriously and permanently injured when the toboggan was negligently operated in such a manner as to collide with a ski tow tower.

In her complaint the plaintiff alleged that the defendant was negligent in failing to refrain from the use of toboggans at the resort after it had been warned and notified, and knew, and should have known that the area was unfit and unsafe for tobogganing; in failing properly, adequately and with due care to supervise the recreational activities carried on at the Signal Point Ski Resort; and in failing to inform and warn the plaintiff of the danger involved in the use of toboggans at the resort. Plaintiff prayed for damages in excess of three thousand dollars, exclusive of interest and costs.

 It appears from the record, then, that at the time of plaintiff's injury she was a tuition-paying student in defendant college; that defendant was a charitable Washington corporation; and that plaintiff received her injuries in the state of Idaho. The principal legal problem presented is one of conflict of laws. In Idaho a charitable corporation is not liable to a beneficiary for damages in tort.[3] In Washington, such a corporation no longer enjoys that immunity.[4] Federal jurisdiction in the present case is based upon diversity of citizenship and I must, therefore, apply the local substantive law.[5] Specifically as to what law governs, the conflict of laws rule of the Washington State Supreme Court will be decisive.[6] The rule announced by that Court in Richardson v. Pacific Power & Light Co., 11 Wash. 2d 288, 299, 118 P.2d 985, 991, is "that the existence and nature of a cause of action for tort are governed by the law of the place where the alleged wrong was committed." One of the supporting authorities cited in the opinion is "Restatement, Conflict of Laws (1934), § 378."

 It seems clear that in the instant case the wrong was committed in Idaho, even assuming, as I do, that within the State of Washington defendant received information and knowledge that toboggans could not safely be used at the Signal Point Ski Resort and that, in Washington, it failed to discharge its positive duty to warn plaintiff of the danger. No negligent act or omission in Washington resulted in any physical injury of the plaintiff in that state. Where the act or omission complained of occurs in one place and the injury is inflicted in another, the place of wrong or *locus delicti* is the place where the injury was sustained; or, as it has sometimes been stated, the place of wrong is in the state where the last event necessary to make an actor liable for an alleged tort occurs.[7]

3. Wilcox v. Idaho Falls Latter Day Saints Hospital, 59 Idaho 350, 82 P.2d 849, decided June 23, 1938.

4. Pierce v. Yakima Valley, etc., Ass'n, 1953, 43 Wash.2d 162, 260 P.2d 765.

5. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Angel v. Bullington, 330 U.S. 183, 191, 67 S.Ct. 657, 91 L.Ed. 832; Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524.

6. Klaxon Co. v. Stentor Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477.

7. 15 C.J.S., Conflict of Laws, § 12, p. 899; Restatement, Conflict of Laws, Sec. 377; Smyth Sales v. Petroleum Heat & Power Co., 3 Cir., 128 F.2d 697; Hunter v. Derby Foods, 2 Cir., 110 F.2d 970, 972, 133 A.L.R. 255; Boulevard Airport v. Consolidated Vultee Air Corp., D.C., 85 F.Supp. 876, 880.

Plaintiff argues that defendant may not rely upon the defense of immunity from liability for tort because such a defense is contrary to the public policy of the State of Washington, as announced in Pierce v. Yakima Valley, etc., Ass'n, supra. My attention is directed to the widely accepted rule that a claim or defense valid in one state will not be enforced in another if it conflicts with the strong public policy of the forum state.

The Washington State Supreme Court has had occasion to deal with the public policy rule in a number of cases which I shall briefly review. If my list is not complete, it is at least sufficiently comprehensive to furnish a satisfactory basis for evaluation of the Court's attitude toward the rule and of the circumstances in which the Court will apply it.

Bank v. Doherty, 42 Wash. 317, 84 P. 872, 4 L.R.A.,N.S., 1191, presented the question whether a promissory note, made and delivered in Montana by one resident of that state to another, which provided for payment of interest at the rate of 2 per cent per month, a rate higher than the maximum permitted by the usury laws of the State of Washington, would be enforced in an action prosecuted in Washington. The Court said that the validity and construction of the note depended upon the law of the place where it was made, and since the interest rate it carried was valid in Montana, the note was enforceable in Washington. There was no discussion in terms in the opinion of the public policy rule.

Carstens Packing Co. v. Southern Pac. Co., 58 Wash. 239, 108 P. 613, 27 L.R.A., N.S., 975, was an action by a shipper for damages for injuries to cattle alleged to have resulted from negligence of defendant carrier in shipments from points in California to Tacoma, Washington. The defendant carrier set up as a defense a provision of the shipping contract which exempted the carrier from liability for damage to the livestock due to its own ordinary negli-

gence. Such a contract provision was permissible under the law of California, where the contract was made, but was expressly prohibited by a statute of Washington. The Court held that the contract violated the public policy of Washington as expressed in the statute and would not be enforced in the Washington courts.

In Reynolds v. Day, 79 Wash. 499, 140 P. 681, L.R.A.1916A, 432, plaintiff brought an action in Washington to recover damages for injuries which he claimed were caused by the negligence of the defendants while he was in their employ as a miner in the State of Idaho. He alleged in his complaint that Idaho had no statutory provision for industrial insurance or workmen's compensation. The trial court sustained a demurrer to the complaint and dismissed the action on the ground that it was contrary to the public policy of Washington to permit the maintenance of a common law action for damages for negligence against an employer. The public policy relied upon was emphatically declared in the Industrial Insurance Act, Laws of 1911, p. 345, which strongly denounced the common law system of remedies of workmen against employers for injuries received in hazardous work and abolished all actions and causes of action by workmen in such employment against employers for damages for injuries resulting from negligence. The Washington State Supreme Court reversed. It pointed out that rights which have accrued by the law of another state, as a matter of comity are treated as valid everywhere unless they are contrary to the public policy of the place where the action is brought. But, the Court said, to be contrary to public policy in that sense it is not sufficient that the foreign right merely be one that would not be recognized or would not exist by the local law. It must also be contrary to good morals, or natural justice, or prejudicial to the best interests of the citizens of the forum state. The Court concluded that public policy did not prevent enforcement in Wash-

ington of the common law right of the injured Idaho workman to prosecute an action for damages against his employer.

The plaintiff in Hatcher v. Idaho Gold & Ruby Mining Co., 106 Wash. 108, 179 P. 106, brought an action to recover the reasonable value of his services performed as a laborer in Idaho. The defendant alleged as a defense that it had fully performed its employment contract with plaintiff, by which he was to receive as part of his wages considerations other than immediate payment in cash. Plaintiff sought to avoid the defense by invoking a Washington statute which made such employment contracts unlawful. The Court held that the contract which was valid by the laws of Idaho where it was made, was enforceable in the courts of Washington. The Court cited Bank v. Doherty, supra, as supporting authority, and distinguished Carstens Packing Co. v. Southern Pac. Co., supra, on the basis that the contract there relied upon as a defense, although made in another state, was to be partly performed in the State of Washington. In the Hatcher case, as in the instant one, the defendant was a Washington corporation.

In Farley v. Fair, 144 Wash. 101, 256 P. 1031, plaintiff sued for a brokers commission for the sale of real property in Washington. The contract of employment did not contain a description of the real property sufficiently definite to meet the requirements of the Washington statute of frauds. But it was signed in Oregon and was performed by the broker in that state and plaintiff contended that the Oregon law should be applied. It was held that the statute of frauds declared a public policy which would not be subordinated to the laws of another jurisdiction. Carstens Packing Co. v. Southern Pac. Co., supra, was cited as authority.

Mirgon v. Sherk, 196 Wash. 690, 84 P.2d 362, like Bank v. Doherty, supra, involved an action on a promissory note which carried a rate of interest usurious by Washington law, although lawful in the state where the note was made. The Court applied the public policy rule and held that collection of the usurious interest rate of the Oregon-made note could not be enforced in Washington. However, justification for the decision is to be found in the following special circumstances of that case:

The plaintiff was an Oregon corporation with its principal office in Portland, but it had seven branch offices in Washington cities. It was in the loan business. Oregon had a small loans law which permitted exaction of interest up to three per cent a month. Washington had no such law and the maximum legal interest rate in that state was twelve per cent per annum. At some of its Washington branch offices defendant had been charging three per cent per month interest rates. The Court stated that defendant had shown a "manifest" intent to evade the Washington laws, and pointed out that an Oregon corporation should not be allowed to do business in Washington upon more favorable conditions than those accorded to domestic corporations. It is significant that the Court did not overrule, but rather expressly distinguished Bank v. Doherty, supra, where only a single usurious transaction was involved.

In Richardson v. Pacific Power & Light Co., 11 Wash.2d 288, 118 P.2d 985, the Court rejected the contention that an action for wrongful death, which occurred in Oregon, should not be entertained in Washington for the reason that there were substantial differences in the wrongful death statutes of the two states. Since Richardson v. Pacific, etc., is the latest expression of the Court which has come to my attention on the topic under discussion, I think it would be helpful to quote two brief excerpts from Judge Steinert's opinion in that case:

"As has already been pointed out, the mere fact that the *lex loci* and the *lex fori* are different is not enough to justify the courts of the forum in refusing to enforce the statute of the locus of the tort on the ground that it is contrary to

the public policy of the state in which suit is brought. In fact, as is stated in Rose v. Phillips Packing Co., D.C., supra, [21 F.Supp. 485], the modern trend of authority is to disregard the differences between the death statutes of the several states and to give general effect to the law of the state where death occurred, regardless of the provisions of the statute in force in the state where enforcement is sought. We think that this tendency is a sound and wholesome one, since there is a strong public policy in every jurisdiction 'in favor of recognizing and enforcing rights and duties validly created by a foreign law,' and consequently the invocation of the public policy of the forum as a bar to the enforcement of foreign rights of action should be very narrowly limited, especially as between the states of the United States, where serious differences are not likely to be found." 11 Wash.2d at pages 301, 302, 118 P.2d at page 992.

The first paragraph of the following excerpt from the Richardson opinion is a quotation from Judge Cardozo in Loucks v. Standard Oil Co., 224 N.Y. 99, 120 N.E. 198:

" 'We are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home. Similarity of legislation has indeed this importance; its presence shows beyond question that the foreign statute does not offend the local policy. But its absence does not prove the contrary. It is not to be exalted into an indispensable condition. * * * The courts are not free to refuse to enforce a foreign right at the pleasure of the judges, to suit the individual notion of expediency or fairness. They do not close their doors, unless help would violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal.'

"None of these reasons for refusing access to our courts is to be found in the present case. We therefore conclude our discussion of appellants' first contention by saying that the enforcement of the Oregon wrongful death statute in this action is not against the public policy of the state of Washington."

 A paraphrase of the last paragraph of the foregoing excerpt can well be adopted here. Examination of Pierce v. Yakima Valley, etc., Ass'n, supra, will disclose that recognition of the immunity of a charitable corporation from liability for torts in this state after that case was decided, would not " 'violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal.' " The decision represented an abrupt, about face in judicial policy. For sixty years the Court had granted immunity to charitable institutions from liability for negligence, other than negligence in the selection of their servants, resulting in injuries to beneficiaries. See dissenting opinion of Judge Donworth, 43 Wash.2d at page 182, 260 P.2d 765. The Court overruled many of its prior decisions. Two judges wrote dissenting opinions. Moreover, the Washington cases which I have reviewed in this opinion indicate clearly that the Washington Court would not in the instant case invoke the public policy rule to bar the immunity defense of defendant Whitworth College. The Court has consistently recognized rights arising under the laws of other states, even though they are contrary to positive provisions of the statutes of this state, unless there are special circumstances involved, such as reliance upon a foreign-made contract to be performed in part in this state, or such a contract involves real property in this state, or the party relying upon the foreign right shows a "manifest" intent and purpose to evade the laws of this state.

In oral argument, plaintiff's counsel stressed a contention, based upon an ingenious theory discussed in editorial comment on pages 55 and 56 of the annotation in 25 A.L.R.2d, which begins at page 35. The theory is that the trial court should not be concerned with the question whether the law of the place of the tort grants immunity to domestic corporations but, rather should consider whether that law grants immunity to foreign corporations which may not enjoy immunity under the law of the place of incorporation. Specifically, it is argued that Idaho bases its allowance of immunity to charitable corporations on the implied waiver theory—that is, that one who accepts the benefits of a charity impliedly agrees to waive any claim for compensation for injury resulting from negligence in the administration of the charity.[8] In the instant case, any such implied agreement must have been made in Washington, where plaintiff enrolled in and attended college. Therefore, it is urged, since there was no waiver and no immunity in Washington, where the contract was made, Idaho law should not grant immunity to the Washington corporation and, applying the Idaho law, the Washington courts should bar the immunity defense. The A.L.R. annotation cites only one supporting authority, an opinion by a judge of the Supreme Court of New York, Chautauqua County, in Heinemann v. Jewish Agr. Soc., 178 Misc. 897, 37 N.Y.S.2d 354. Examination of the opinion discloses that it cites no supporting authority at all on the point under discussion, but admittedly rests upon "principle" alone.

The question is not whether I favor the adoption of this novel theory but, rather whether there is any reasonable basis for an assumption on my part that it was the law of Idaho when plaintiff sustained her injury on February 12, 1952. The defendant hospital in the Wilcox case, supra, was an Idaho corporation, it is true, but there is not the slightest indication in the principal opinion, or in the special concurrences and dissents, that the Idaho Court would apply a different rule to foreign charitable corporations and deny them immunity. Other courts have allowed foreign corporations immunity without any consideration or discussion of the question whether the corporation in the particular case enjoyed immunity under the law of the place of its incorporation.[9]

The plaintiff's substantive rights became fixed as of the time of her injury. She either had, or did not have, an enforceable claim or cause of action under Idaho law on February 12, 1952. Her claim or right of action must be determined by the law as it existed at that time, and any subsequent modification of the substantive law should not affect the disposition of the instant case.[10] Pierce v. Yakima Valley, etc., Ass'n, supra, which abruptly changed the Washington law and withdrew immunity from liability for tort from charitable corporations, was not decided until September 1, 1953, more than a year and a half after plaintiff received her injury. At the time her claim or cause of action arose, by the law of Washington as it then existed, defendant corporation was immune from liability for her injury. Therefore, even if I assume that the Idaho Court would determine whether defendant was immune by consulting the law of Washington, the state of its incorporation, I must also assume that the Idaho Court would take the Washington law as it stood at the time of plaintiff's injury and, therefore, would be obliged to conclude that defendant was immune from tort liability.

Defendant's motion for summary judgment is granted.

---

8. See Wilcox v. Idaho Falls Latter Day Saints Hosp., cited in footnote 3.

9. For example, see Webb v. Vought, 127 Kan. 799, 275 P. 170; Young v. Boy Scouts of America, 9 Cal.App.2d 760, 51 P.2d 191; Hinman v. Berkman, D.C., 85 F.Supp. 2.

10. Richardson v. Pacific Power & Light Co., 11 Wash.2d 288, 301, 118 P.2d 985.