JEROME KAUFMAN, Individually and as Administrator of the Estate of LYNN KAUFMAN, Deceased, Respondent, *v.* AMERICAN YOUTH HOSTELS, INC., Appellant.

Second Department, July 8, 1958.

224

*Lillian E. Cuff* for appellant.

*William A. Hyman* and *Harold W. Hayman* for respondent.

WENZEL, J. It is alleged in the complaint that appellant, a domestic corporation which is engaged in conducting groups of youths on tours, conducted and led a group of children, including respondent's 15-year-old daughter, on a climb of Mount Hood in the State of Oregon. The children fell down the mountain and respondent's child died as a result of her injuries. Respondent has brought this action for damages, under sections 30.010 and 30.020 of the Oregon Revised Statutes, in his separate capacities of father of the child and administrator of her estate.

The defenses which have been struck out are that the appellant is an eleemosynary institution and is therefore immune from liability (first defense) and that the child and her parents executed an agreement, prior to the commencement of the tragic trip, purporting to release appellant from liability (third defense).

The sufficiency of the first defense must be determined according to the law of Oregon, since it is the law of the place where the alleged tortious wrong was committed that governs the question of whether the actor is liable (*Poplar* v. *Bourjois, Inc.*, 298 N. Y. 62). On the other hand, the sufficiency of the third defense must be determined according to the law of New York, since that is the State which had the most significant contacts with the matter in dispute (*Auten* v. *Auten*, 308 N. Y. 155, 160).

Despite the trend to the contrary, Oregon has steadfastly adhered to the rule, albeit by a divided court of last resort, that an eleemosynary institution is exempt from liability for its acts of negligence (*Landgraver* v. *Emanuel Lutheran Charity Bd.*, 203 Ore. 489, followed in *Ackerman* v. *Physicians & Surgeons Hosp.*, 207 Ore. 646, decision withdrawn and changed on other grounds 207 Ore. 646). However, in all the reported cases on the subject in the Supreme Court of Oregon the institution under consideration was an Oregon corporation and therefore the court did not have occasion to state categorically that its rule of immunity extended to all eleemosynary institutions, including those which had been incorporated in another State and even though such other chartering State itself would deny immunity to its corporations for torts committed in its State.

Respondent has seized upon the facts that the trend is against the granting of immunity, that New York, the State in which appellant was incorporated, has finally rejected the doctrine of immunity *in toto* (*Bing* v. *Thunig*, 2 N Y 2d 656), that Oregon has never categorically indicated that it would extend its rule to a New York corporation, and that even the highest court of Oregon has been divided on the general question of immunity, as just above stated, to urge that it should be held that Oregon would not give appellant, a New York corporation, the benefit of its rule of immunity.

In our opinion it is clear that Oregon was motivated, in adopting its rule of immunity, solely by the good works of eleemosynary institutions and a desire to thwart curtailment of such works which would necessarily result from imposition of liability in tort upon such institutions. With this as the sole consideration, we believe that the fact that an institution had been incorporated in another State, and even in a State which itself has a contrary law of liability, would be completely irrelevant in Oregon.

The transcendence of the eleemosynary factor was marked in *Gregory* v. *Salem Gen. Hosp.* (175 Ore. 464, 482) by the passage: "Universally there is reluctance to render anyone liable for an injury to another which he inflicted while engaged unselfishly in helping others ", and in *Landgraver* v. *Emanuel Lutheran Charity Bd.* (203 Ore. 489, 493, 494, *supra*) in these words: "From the beginning, the overriding public policy of this state * * * has been to protect the assets of charitable institutions from use for any purpose other than that for which they were organized. * * * The matter is of the highest importance to every charitable institution in Oregon, including * * * organizations such as the Y. M. C. A., Salvation Army ".

The reference to the "Y. M. C. A." and the "Salvation Army" in the *Landgraver* case (*supra*) is an express allusion to the irrelevance of the place of incorporation of the subject institutions, for it is well known that the said two institutions are national organizations, not necessarily incorporated in every State in which they operate, or even in Oregon.

Further on the subject of the place of incorporation, and also more generally on the question of whether an act of incorporation is even a condition for application of a rule of immunity, it was upon the very occasion that the Supreme Court of Oregon first pronounced a rule of immunity as the law of that State, in *Hill* v. *Tualatin Academy* (61 Ore. 190), that that court in effect indicated that the fact that the sov-

ereignty which had granted a corporate charter to the subject institution was foreign to the forum, or that the institution was even a corporation, would be irrelevant factors, for it cited with approval *Currier* v. *Trustces of Dartmouth Coll.* (105 F. 886, affd. on other grounds 117 F. 44) which involved Dartmouth College, a corporate entity whose charter had been granted by the British Crown, and was decided by a Federal District Court, and *Farrigan* v. *Pevear* (193 Mass. 147) which involved an institution that was not a corporation. In both the *Currier* case (*supra*) and the *Farrigan* case (*supra*) the doctrine of immunity was applied in favor of the subject institutions.

Two United States District Courts were confronted with precisely the same issue in two cases in which accidents occurred in States which exempted charitable institutions from tort liability, and in each case the exemption was held to shield foreign, as well as domestic, corporations (*Hinman* v. *Berkman,* 85 F. Supp. 2; *Jeffrey* v. *Whitworth Coll.,* 128 F. Supp. 219). In the *Hinman* case (*supra*), the accident occurred in Missouri and the defendant was a New York corporation. The court flatly held (p. 3) that the defendant "may take advantage of the exemption so granted by the laws of that State [Missouri], though its liability under similar circumstances may be otherwise by the laws of its domicile." In the *Jeffrey* case, the accident occurred in Idaho and the defendant was a Washington corporation. The fact is that Washington had recently renounced its own rule of immunity (see *Pierce* v. *Yakima Val. Mem. Hosp. Assn.,* 43 Wn. [2d] 162), but on the question of whether Idaho would have been concerned with what the law of Washington was, the court wrote (p. 225): "there is not the slightest indication" in the several opinions in a certain leading Idaho case on the subject of immunity of charitable institutions (*Wilcox* v. *Idaho Falls Latter Day Saints Hosp.,* 59 Idaho 350) "that the Idaho Court would apply a different rule to foreign charitable corporations and deny them immunity. Other courts have allowed foreign corporations immunity without any consideration or discussion of the question whether the corporation in the particular case enjoyed immunity under the law of the place of its incorporation" (citing *Webb* v. *Vought,* 127 Kan. 799; *Young* v. *Boy Scouts of America,* 9 Cal. App. 2d 760; *Hinman* v. *Berkman, supra*).

In the *Webb* case (*supra*) an Illinois corporation was involved, the Salvation Army of Wichita. In the *Young* case (*supra*), it was an institution which had been created by an act of Congress. Reference has already been made hereinabove to the fact that in the *Hinman* case (*supra*) the court was actu-

ally concerned with a New York corporation. Another case in which the immunity rule of the forum was applied, regardless of the law of the State in which the subject institution had been incorporated (Mississippi), is *Bodenheimer* v. *Confederate Mem. Assn.* (68 F. 2d 507).

*Heinemann* v. *Jewish Agric. Soc.* (178 Misc. 897, affd. 266 App. Div. 907), upon which respondent relies, was decided upon reasoning which is not acceptable to us, and the case is probably distinguishable. There, a New York charitable corporation was charged with the commission of a tort in New Jersey, where the law at the time was that a charitable corporation was not liable to a recipient of its benefactions for the negligence of its employees (see *Bianchi* v. *South Park Presbyterian Church,* 123 N. J. L. 325). The case was decided in 1942, some years prior to, and therefore without the benefit of, the decisions in the *Hinman, Jeffrey, Gregory* and *Landgraver* cases (*supra*). In our opinion the trial court in the *Heinemann* case erred in its view that the law of New York was applicable merely because the place where the plaintiffs had made arrangements with the defendant for acceptance of the defendant's benefactions was New York, the law of which would not exempt the defendant had the accident happened here. We also are of the opinion that in the *Heinemann* case (*supra*) the court erred in injecting the irrelevant factor that New Jersey itself exercised no power of visitation over the defendant. (See the criticism and rejection of the *Heinemann* case [*supra*] in the opinion in the *Jeffrey* case [128 F. Supp. 219, 225, *supra*].)

In view of the foregoing, it is our conclusion that the first defense should not have been struck out. The question of whether the allegations of the defense will be proved must, of course, await determination after trial.

We turn to the third defense. The agreement is quoted in part in the answer as follows: "I agree to abide by hostel customs while on my trip, and to follow all directions provided by American Youth Hostels, Inc. I hereby release American Youth Hostels, Inc. and its agents of any and all responsibility or liability of any nature whatsoever for any loss of property or personal injury occurring on this trip or any substitute trip under its management. I understand that American Youth Hostels, Inc. acts as an agent only and accepts no responsibility for loss, damage of [*sic*] injury resulting of [*sic*] delay of any kind or negligence of any transportation company, agency or service, or from any other cause whatsoever. I further agree to assume all responsibility for any and all debts incurred by myself during the trip."

Agreements such as this are covenants not to sue (*Wilder* v. *Pennsylvania R. R. Co.*, 245 N. Y. 36) and are generally enforcible (*Wilder* v. *Pennsylvania R. R. Co., supra; Anderson* v. *Erie R. R. Co.*, 223 N. Y. 277; *Mercante* v. *Hygrade Food Prods. Corp.*, 258 App. Div. 641). However, they are not looked upon with favor by the courts, are strictly construed against the party relying on them, and clear and explicit language in the agreements is required in order to absolve the promisee from liability (*Boll* v. *Sharp & Dohme*, 281 App. Div. 568, 570, affd. 307 N. Y. 646; *Howard* v. *Handler Bros. & Winell*, 279 App. Div. 72, affd. 303 N. Y. 990).

We are of the opinion that the words in the agreement that the appellant is released " of any and all responsibility or liability of any nature whatsoever for any   *   *   *   personal injury occurring on this trip " are sufficiently clear and explicit to show that personal injuries occasioned by appellant's negligence were intended to be included, even though the word " negligence " itself does not appear in the agreement in this connection.

However, since the text of the agreement is couched in the first person singular, we cannot at this time say that the covenant was given by anyone other than the respondent's child, the only one of the signatories who was to make the trip. As to whether the covenant was also undertaken by respondent, the document is ambiguous. His signature might be taken to be no more than a consent to the child's participating in the trip and to her giving this covenant to appellant. Resolution of the ambiguity will have to await the trial of this action. This is as to respondent's cause of action in his capacity as father of the child, which cause is maintainable independently of any right of the child or her estate (*Schleiger* v. *Northern Term. Co.*, 43 Ore. 4).

So far as the cause in respondent's capacity as administrator of the child's estate is concerned, the right of the child to disaffirm the agreement by reason of her infancy was effectively exercised by respondent by the act of commencing this action (see 43 C. J. S., Infants, §§ 75, 76, pp. 171, 183; 33 C. J. S., Executors & Administrators, § 189, p. 1170).

Accordingly, the striking out of the third defense was correct insofar as it was pleaded as a defense to respondent's cause as administrator of the child's estate (the second cause of action in the complaint) but incorrect insofar as it was pleaded as a defense to respondent's cause as father of the child (the first cause of action in the complaint).

The order should be modified by striking therefrom the ordering paragraphs and by substituting therefor a provision that the motion be granted to the extent of striking out the third affirmative defense insofar as it is pleaded as a defense to the second cause of action, and that in all other respects the motion is denied. As so modified, the order should be affirmed, without costs.

NOLAN, P. J., BELDOCK, MURPHY and HALLINAN, JJ., concur.

Order modified by striking therefrom the ordering paragraphs and by substituting therefor a provision that the motion be granted to the extent of striking out the third affirmative defense insofar as it is pleaded as a defense to the second cause of action, and that in all other respects the motion is denied. As so modified, order affirmed, without costs.