# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of )
                                )
CHANDRA LONG, )
                                )
           Respondent, )
                                )
    and )
                                )
MICHELANGELO BORRELLO, )
                                )
           Petitioner. )

No. 77630-4-I

DIVISION ONE

PUBLISHED OPINION

FILED: July 9, 2018

LEACH, J. — Michelangelo Borrello appeals the trial court's decisions requiring the relocation of the parties' nine-year-old daughter, A., from Italy to Washington state before a permanent parenting plan has become final. His challenge requires resolution of the relationship between an emergency order entered by the Court of Rome under article 11 of the 1996 Hague Convention on Jurisdiction, Applicable Law, Recognition, Enforcement and Co-operation in Respect of Parental Responsibility and Measures for the Protection of Children (1996 Hague Convention),[1] article 5 of this treaty, Washington's Uniform Child

---

[1] Hague Convention on Jurisdiction, Applicable Law, Recognition, Enforcement and Co-operation in Respect of Parental Responsibility and Measures for the Protection of Children, Oct. 19, 1996, 35 I.L.M. 1391, https://assets/hcch.net/docs/f16ebd3d-f398-4891-bf47-110866e171d4.pdf.

Custody Jurisdiction and Enforcement Act (UCCJEA)[2], and a later order entered by a Washington court asserting jurisdiction under the UCCJEA.

The trial court properly exercised jurisdiction under the UCCJEA. Because its order temporarily relocating A. addressed "the measures required by the situation," it satisfied the requirements of the 1996 Hague Convention, and the Court of Rome's emergency order lapsed. The order did not violate the doctrine of comity or RCW 26.09.197. We affirm.

## FACTS

Borrello is an Italian citizen, and Chandra Long is a United States citizen who grew up in Everett, Washington. They married in the United States in 2008 but later moved to Italy. A., their only child, was born in Italy in March 2009. In March 2011, Long brought A. to Washington. Borrello petitioned a Washington court under the 1980 Hague Convention on the Civil Aspects of International Child Abduction (1980 Hague Convention)[3] for A.'s return to Italy. In August 2011, the Washington court granted Borrello's request and ordered that A. return to Italy.

---

[2] Ch. 26.27 RCW.

[3] Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 49, https://assets.hcch.net/docs/e86d9f72-dc8d-46f3-b3bf-e102911c8532.pdf.

In December 2012, the Court of Rome approved the parties' "non-consensual separation" agreement. The agreement stated that Borrello and Long would have shared custody of A. but A. would be placed with Long. It also permitted Long to transfer A.'s residence to Washington state and specified Borrello's visitation rights and child support obligations. Long and A. moved from Italy to Everett, Washington, in September 2013. In April 2015, Borrello asked the Court of Rome to modify the agreement, claiming that Long prevented him from contacting and forming a relationship with A. The Court of Rome exercised jurisdiction in October 2015.

In November 2015, Long filed a petition for dissolution in Washington. In December, she appealed the Court of Rome's decision to Italy's highest court, the Court of Cassation, challenging its jurisdiction. In February 2016, Long asked the Washington court to move forward with the dissolution proceedings, and Borrello asked the court to dismiss them. The Washington court stayed both requests pending the outcome of the Italian proceedings.

In June 2016, A. returned to Italy for her summer visitation with Borrello. The Court of Rome then awarded Borrello temporary sole custody of A. to allow A. to live in Italy for the 2016-2017 school year pending the outcome of the Court of Cassation's ruling. In February 2017, the Court of Cassation held that Italy

lacked jurisdiction over Borrello's request to modify the parties' separation agreement. Borrello later asked the Court of Rome to exercise emergency jurisdiction under article 11 of the 1996 Hague Convention.

In June 2017, the Court of Rome closed the pending proceedings based on the Court of Cassation's decision that it lacked jurisdiction but granted Borrello's request that it take urgent measures. It held that it was "absolutely necessary for [A.'s] interest" that she remain in Italy and continue her schooling based on a number of factors, including Long's behavior suggesting that she was trying to make it difficult for Borrello to develop a relationship with A. It ordered that A. remain in Italy until "such time when the American court will be able to evaluate the array of elements indicated so far [and] may make any final decision attributable to it alone."

In July 2017, Long asked the Washington trial court to order A.'s return to Washington, to lift the stay on the dissolution proceedings, and to convert the parties' 2012 separation agreement to a decree of dissolution, permanent parenting plan, and order of child support. Long alleged that the court had jurisdiction under the UCCJEA. Borrello disagreed. He also petitioned the Civil Court of Milan to confirm A.'s sole custody with him and her continued residence in Italy.

No. 77630-4-I / 5

In September 2017, a Washington state superior court commissioner found that Washington had jurisdiction to decide parenting issues involving A. under the UCCJEA, lifted the stay on the dissolution proceedings, denied Borrello's motion to dismiss, and refused to order A.'s return to Washington. In October, the superior court granted Long's request to revise the commissioner's decision and ordered A.'s return to Washington state within two weeks. In November, the court denied Borrello's motion for reconsideration.

Borrello asked this court for interlocutory review of the trial court decisions finding jurisdiction under the UCCJEA and ordering the return of A. The trial court denied his motion to stay the trial court proceedings pending appellate review. In December, this court stayed all trial court proceedings. In January 2018, we granted discretionary review and extended the stay. Borrello appeals.

STANDARD OF REVIEW

An appellate court reviews de novo questions of law, including jurisdictional issues.[4] It reviews temporary parenting plans for an abuse of discretion.[5] "A trial court abuses its discretion when its order is manifestly unreasonable or based on untenable grounds."[6]

_____

[4] In re Marriage of Tostado, 137 Wn. App. 136, 144, 151 P.3d 1060 (2007).
[5] In re Parentage of Jannot, 149 Wn.2d 123, 128, 65 P.3d 664 (2003).
[6] Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 339, 858 P.2d 1054 (1993).

-5-

ANALYSIS

## The Trial Court's Order Was Not in Conflict with the 1996 Hague Convention

Borrello asserts that the trial court lacked jurisdiction to order A.'s return from Italy until it entered a final parenting plan and the parties had exhausted their right to appellate review of it. He claims that article 11 and article 5 of the 1996 Hague Convention require this result. We disagree.

Both Italy and the United States are contracting states to the Hague Conference.[7] Article 5 of the 1996 Hague Convention generally describes the authority of contracting states to make child custody decisions. It gives the "Contracting State"[8] of the child's "habitual residence" jurisdiction to take protective measures: "(1) The judicial or administrative authorities of the Contracting State of the habitual residence of the child have jurisdiction to take measures directed to the protection of the child's person or property."

---

[7] Hague Conference Members, HAGUE CONF. ON PRIV. INT'L L., https://www.hcch.net/en/states/hcch-members (last visited June 29, 2018).

[8] "'Contracting State' refers to a state which has consented to be bound by a convention, **whether or not that Convention has entered into force for that State**." FAQ: What Is the Difference between Member, State Party and Contracting State?, HAGUE CONF. ON PRIV. INT'L L., https://www.hcch.net/en/instruments/conventions/specialized-sections/apostille/faq1 (last visited June 29, 2018).

But article 11 provides that any contracting state where the child is located has jurisdiction to take protective measures "[i]n all cases of urgency": "(1) In all cases of urgency, the authorities of any Contracting State in whose territory the child or property belonging to the child is present have jurisdiction to take any necessary measures of protection."

Article 11 also limits the duration of urgent protective measures taken under it: "(2) The measures taken under the preceding paragraph with regard to a child habitually resident in a Contracting State shall lapse as soon as the authorities which have jurisdiction under Articles 5 to 10 have taken the measures required by the situation."

In February 2017, the Court of Cassation held that the Italian courts did not have jurisdiction under article 5 to modify the parties' parenting agreement: "[T]he fact that [A.] has been habitually residing in the US since 2013 is clearly reflected in the court records, therefore the Italian courts lack of jurisdiction is confirmed."

Borrello then asked the Court of Rome to exercise its authority under article 11 to impose urgent protective measures and prevent Long from returning A. to the United States. The Court of Rome granted Borrello's request. It ordered that A. remain in Italy until "such time when the American court will be

able to evaluate the array of elements indicated so far" and "may make any final decision attributable to it alone." Borrello claims that this provision limited the trial court's authority under article 5 to decide for itself when it had "taken the measures required by the situation" as article 11 requires. Borrello misinterprets the Court of Rome's authority under article 11.

Under article 11(2), a contracting state's emergency measures "shall lapse as soon as the authorities which have jurisdiction under articles 5 to 10 have taken the measures required by the situation." Both the Court of Cassation and the Court of Rome acknowledged that the United States is A.'s habitual residence and that the United States has jurisdiction under article 5. As discussed below, the Washington superior court determined that it had jurisdiction under the UCCJEA. Thus, under article 11(2), when the trial court exercised its article 5 authority and issued its temporary order, the Court of Rome's order lapsed.

Borrello misinterprets the scope of article 11 authority when he claims that "the Court of Rome identified the 'measures required by the situation' that the Article 5 court must take." Article 11 states that a court exercising emergency jurisdiction may take "any necessary measures of protection," which lapse when an article 5 court has "taken the measures required by the situation."[9] Article 11

---

[9] 1996 Hague Convention art. 11(1)-(2).

does not grant to that court the authority to define what measures taken by an article 5 court are those "required by the situation." Borello cites no authority interpreting the 1996 Hague Convention to provide a court exercising emergency jurisdiction under article 11 to so limit the authority of a court exercising jurisdiction under article 5. He offers no persuasive reason why this court should interpret the 1996 Hague Convention this way.

Article 5 gave Washington state, as the habitual residence of A., the authority to decide and take "the measures required by the situation," including the authority to enter a temporary parenting plan. Article 11 did not limit this authority nor could the Court of Rome's order. The trial court's temporary parenting plan and associated orders did not contravene the 1996 Hague Convention.

### Washington State Has Jurisdiction over A. under the UCCJEA

Borrello claims that the UCCJEA did not provide the trial court with authority to enter a temporary parenting plan. In July 2017, when Long asked the Snohomish County Superior Court to order a temporary parenting plan and require A.'s return to Washington, the trial court exercised jurisdiction over A. under the UCCJEA. Borrello asserts that the trial court should not have looked to the UCCJEA to determine whether it had jurisdiction to enter temporary orders.

He claims that because Italy and the United States are both contracting states to the 1996 Hague Convention, article 5 of the 1996 Hague Convention determines jurisdiction, not the UCCJEA. Relatedly, he asserts that the trial court should have determined A. habitually resides in Italy within the meaning of article 5, so Washington does not have article 5 jurisdiction. We address each of his arguments in turn.

Article 5 of the 1996 Hague Convention resolves the general authority of two contracting states, the United States and Italy, to decide the parenting dispute between Long and Borrello. The Court of Cassation decided that the courts of the United States, and not Italy, had jurisdiction to decide this dispute because A. habitually resided in the United States. So Borrello's claim that the trial court should have looked to article 5 instead of to the UCCJEA makes little sense. The same is true for his claim that A. habitually resided in Italy. But this does not resolve the authority of the courts of Washington state to resolve the custody issue. Borrello provides no authority to support the proposition that the 1996 Hague Convention, rather than the UCCJEA, determines Washington State's jurisdiction. Neither Washington case law nor the UCCJEA supports his position.

Washington courts look to the UCCJEA to determine their authority to decide a child custody dispute.[10] This includes making an initial custody determination, modifying a custody determination, or issuing a temporary emergency custody order. The petitioner has the burden to establish jurisdiction.[11] Apart from his failed argument about the relationship of articles 5 and 11, Borrello does not identify any legal authority questioning the UCCJEA as the legal authority for determining the trial court's authority to act in this case.

Borrello also contends that Long did not establish jurisdiction under the UCCJEA. But Long met her burden to establish jurisdiction in Washington.

The UCCJEA defines an "initial determination" as "the first child custody determination concerning a particular child."[12] Here, the Court of Rome made the initial determination in 2012 when it approved the parties' "non-consensual separation" agreement. The trial court's order requiring A.'s temporary return to Washington state is therefore a modification of the original determination. A Washington state court has jurisdiction to modify a child custody determination made by a court of another state or foreign country[13] if (1) it has jurisdiction to

---

[10] In re Marriage of Ieronimakis, 66 Wn. App. 83, 90, 831 P.2d 172 (1992) (referring to the Uniform Child Custody Jurisdiction Act, the previous iteration of the UCCJEA); see ch. 26.27 RCW.

[11] Ieronimakis, 66 Wn. App. at 90.

[12] RCW 26.27.021(8).

[13] "A court of this state shall treat a foreign country as if it were a state of the United States for the purpose of applying Articles 1 and 2." RCW 26.27.051.

make an "initial custody determination" and (2) the court of the other state "determines it no longer has exclusive continuing jurisdiction . . . or a court of this state would be a more convenient forum."[14]

> (1) [A Washington state court] has jurisdiction to make an initial child custody determination only if:
> (a) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
> (b) A court of another state does not have jurisdiction under (a) of this subsection, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under RCW 26.27.261 or 26.27.271, and:
> (i) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and
> (ii) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;
> (c) All courts having jurisdiction under (a) of this subsection have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under RCW 26.27.261 or 26.27.271; or
> (d) No court of any other state would have jurisdiction under the criteria specified in (a), (b), or (c) of this subsection.[15]

"'Home state' means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding."[16] Here, Long started modification proceedings when she filed a petition for dissolution in Washington

---

[14] RCW 26.27.221.
[15] RCW 26.27.201.
[16] RCW 26.27.021(7).

state in November 2015. A. lived continuously with Long in Washington from September 2013 until June 2016. Then A. went to Italy for her scheduled summer visitation with Borrello. The Court of Rome then ordered A. to remain in Italy with Borrello until the Court of Cassation issued its decision on whether the Italian courts had jurisdiction to modify the parties' parenting plan. So A. remained in Italy until the trial court ordered that she return to Long's care in Washington by October 24, 2017. Because A. continuously lived with Long in Washington for more than two years before Long started the dissolution proceedings in 2015, Washington is A.'s "home state" under the UCCJEA.

Further, no other state is A.'s home state. The Court of Cassation held that Italy lacked jurisdiction based on its finding that A. had habitually resided in the United States since 2013. In addition, both A. and Long have a significant connection with Washington. A. lived in Everett, Washington, from September 2013 until June 2016. Long was raised in Everett and has lived there since 2013. In her motion to establish jurisdiction under the UCCJEA, Long identified substantial evidence of the care and protection A. receives in Washington: before October 2016 when the Court of Rome ordered that A. stay in Italy for the school year, A. had a number of friends at her elementary school where she attended kindergarten and first grade, she participated in weekly activities such

as art class, her maternal grandparents lived four blocks away, and her pediatrician and dentist were located in Everett. Finally, no court of any other state could satisfy the UCCJEA requirements and exercise jurisdiction to make an initial child custody determination. The trial court thus properly exercised jurisdiction under the UCCJEA.

<u>The Trial Court's Order Does Not Contravene the Doctrine of Comity or RCW 26.09.197</u>

A. *The Doctrine of Comity*

Borrello claims that the trial court's order temporarily relocating A. violates the doctrine of comity because it does not respect the Court of Rome's order requiring that A. remain in Italy until an American court makes a final decision. This doctrine provides that "a court has discretion to 'give effect to laws [and resulting judicial orders] of another jurisdiction out of deference and respect, considering the interests of each [jurisdiction].'"[17] "Orders 'will be recognized and given force if it be found that they do not conflict with the local law, inflict an injustice on our own citizens, or violate the public policy of the state.'"[18]

___

[17] <u>MacKenzie v. Barthol</u>, 142 Wn. App. 235, 240, 173 P.3d 980 (2007) (alterations in original) (quoting <u>Haberman v. Wash. Pub. Power Supply Sys.</u>, 109 Wn.2d 107, 160-61, 744 P.2d 1032, 750 P.2d 254 (1987)).
[18] <u>MacKenzie</u>, 142 Wn. App. at 240 (internal quotation marks omitted) (quoting <u>Reynolds v. Day</u>, 79 Wash. 499, 506, 140 P. 681 (1914)).

The doctrine of comity does not apply here because the trial court was not recognizing or enforcing the Court of Rome's order. In its original order, the trial court did "confirm[ ] registration" of the Court of Cassation and the Court of Rome's orders. But because the trial court had jurisdiction over A. under the UCCJEA and its orders were independent of the Court of Rome's temporary order under article 11 of the 1996 Hague Convention and caused the Court of Rome's order to lapse, it had no obligation to address the Court of Rome's order and did not fail to respect it. The trial court did not abuse its discretion by entering temporary orders.

*B.     RCW 26.09.197*

Finally, Borrello relies on In re Marriage of Kovacs,[19] in which our Supreme Court examined a previous version of RCW 26.09.197[20] to support his claim that the trial court's order ignores the considerations listed in this statute,

The first factor in the former version of the statute interpreted in Kovacs required a trial court awarding temporary custody to consider "[w]hich parent has taken greater responsibility during the last twelve months for performing parenting functions relating to the daily needs of the child."[21] Borrello claims that because A. lived with him for more than 12 months leading up to the trial court's

---

[19] 121 Wn.2d 795, 808-09, 854 P.2d 629 (1993).
[20] Former RCW 26.09.197 (1987).
[21] Former RCW 26.09.197; Kovacs, 121 Wn.2d at 808.

order temporarily relocating A. to Washington state, the trial court did not adequately consider the first factor and erred in issuing its orders. Borrello's argument does not take into consideration the legislature's substantial amendment of RCW 26.09.197 in 2007. The amended statute states as follows:

> After considering the affidavit required by RCW 26.09.194(1) and other relevant evidence presented, the court shall make a temporary parenting plan that is in the best interest of the child. In making this determination, the court shall give particular consideration to:
> (1) The relative strength, nature, and stability of the child's relationship with each parent; and
> (2) Which parenting arrangements will cause the least disruption to the child's emotional stability while the action is pending.
> The court shall also consider the factors used to determine residential provisions in the permanent parenting plan.

The trial court's orders are consistent with the current version of the statute. The UCCJEA and the parties' 2012 separation agreement state that A. has a stronger relationship with Long in Washington than with Borrello in Italy. Before living with Borrello during the 2016-2017 school year, A. lived with Long in Washington for almost three years. Washington is A.'s "home state" as defined by the UCCJEA, and Borrello's and Long's 2012 separation agreement stated that A. would be placed with Long. The trial court modeled the temporary parenting plan after the parties' 2012 separation agreement and thus designated Long as A.'s custodian. The trial court's decision that A. live in her "home state"

with her custodial parent is not contrary to the statute and is not an abuse of discretion.

CONCLUSION

The trial court's temporary orders do not contravene the 1996 Hague Convention, the rule of comity, or RCW 29.09.197. The trial court has jurisdiction under the UCCJEA. We affirm.

*Leach, J.*

WE CONCUR:

*Mann, ACJ*

*Dwyer, J.*